## IN THE COURT OF APPEALS OF TENNESSEE
## AT MEMPHIS
February 24, 2015 Session

## KAREN ABRAMS MALKIN v. REED LYNN MALKIN

**Direct Appeal from the Chancery Court for Shelby County**
**No. D27924     Walter L. Evans, Chancellor**

---

**No. W2014-00127-COA-R3-CV- Filed March 26, 2015**

---

This appeal involves an obligor's petition to modify or terminate his alimony obligation due to his retirement. The trial court found that the obligor's income had decreased to approximately one-third of his previous income level, so the trial court reduced the alimony payments by a corresponding percentage, to roughly one-third of the previous obligation. The recipient appeals. We hold that the trial court applied an incorrect legal standard when considering the petition to modify and also erred in its factual findings. Based on our review of the evidence, the obligor failed to demonstrate that modification of his alimony obligation was warranted. Consequently, we reverse the trial court's decision, reinstate the previous alimony award, dismiss the petition for modification, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Lori Renee Holyfield, Bartlett, Tennessee, for the appellant, Karen Abrams Malkin.

Sarah Johnson Carter and Robert Alan Wampler, Memphis, Tennessee, for the appellee, Reed Lynn Malkin.

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

Reed Lynn Malkin ("Husband") and Karen Abrams Malkin ("Wife") were married for approximately nineteen years before they were divorced on April 27, 1998. Wife was granted a divorce based on Husband's inappropriate marital conduct. Wife was also

granted custody of the parties' minor child. At the time of the divorce, Husband was a practicing attorney. It is not clear where Wife worked, but her social security earnings statement reflects that she earned $21,349 in 1998. The statement also indicates that Wife earned no income between 1979 and 1987, which includes a lengthy period during the marriage. Regarding alimony, the final decree of divorce stated:

> That the Court finds, after considering all of the relevant factors set forth in T.C.A. § 36-5-[121],[1] such as the length of the marriage, [Wife's] age, [Wife's] education, and other relevant factors, that she is so economically disadvantaged that rehabilitation is not feasible or possible, so that the Court awards [Wife] alimony in futuro in the sum of $3,500 per month, which shall be paid beginning April 1, 1998, and the first of every month thereafter until her death or remarriage[.]

Five years after the divorce decree was entered, in 2003, Husband filed a petition to modify or terminate his alimony obligation. Husband claimed that he had experienced an 88% decrease in income from his law practice since the entry of the divorce decree, and he claimed that Wife had an earning capacity that would enable her to maintain a reasonable standard of living. Thus, Husband claimed that a substantial and material change in circumstances had occurred to warrant a reduction in his alimony obligation. Following a hearing, the trial court entered an order granting Husband's petition on January 20, 2004. The trial court found that Husband's income was approximately $273,000 at the time of the divorce and that it had averaged $221,894 during the past five years, for a reduction of 18 percent. The trial court also found that Wife's monthly expenses had decreased by approximately 25 percent (from $6,248 to $4,705). As a result, the trial court modified the final decree of divorce to reduce Husband's monthly alimony obligation by 18 percent, from $3,500 to $2,870, beginning February 1, 2004.

On February 22, 2007, Husband filed a petition for further modification or termination of his alimony obligation. In response, Wife filed a counter-petition to increase the alimony obligation. These petitions were litigated over the next three years. Husband filed an amended petition in 2009, and the trial court eventually heard all of the petitions over six days in late 2009. The trial court entered an order on April 12, 2010, describing the "numerous days of testimony" and "excessive amount of legal energy, talent, and expenses consumed and invested into this proceeding on both sides[.]" The court found that Husband's average income over the past five years from his law practice, interest, and dividends from investments was $265,397.20, almost as much as he earned at the time of the divorce. The court found that Wife's "relevant monthly expenses" were approximately $6,200 per month, again comparable to the amount that existed at the

---

[1]The factors relevant to the alimony analysis are now found at Tennessee Code Annotated section 36-5-121 rather than section 36-5-101. We have cited to the current version of the statute to avoid confusion.

divorce. However, the court also found that Wife was "capable of working part-time" and was in fact earning about $1,300 per month from part-time employment. The court also noted that Wife, age 64, was qualified to receive social security benefits. The court ultimately concluded that although Wife needed "continued financial support" from Husband, the alimony obligation "should not be disturbed considering the additional sources of income available to Former Wife" since the entry of the previous order setting support at $2,870.

Husband filed the instant petition to modify three years later, on May 31, 2013. In this petition, Husband alleged that his income from his law practice had substantially decreased over the past five years and that he had recently retired. Husband stated that he was drawing social security and funds from pension. Husband also noted that Wife was drawing social security benefits. For these reasons, he claimed that his alimony obligation should be further reduced or terminated.

Following a hearing, the trial court entered an order on December 16, 2013, granting Husband's petition and modifying the alimony obligation. The trial court found that Husband had retired and "suffered at least a 2/3's decrease in income and therefore the alimony in futuro heretofore awarded should be modified to the sum of $1,035.00 per month effective January 1, 2014." Wife timely filed a notice of appeal.

## II. ISSUES PRESENTED

Wife presents the following issues, as slightly reworded, for review on appeal:

1. Did the trial court err in granting Husband's petition for modification of alimony and/or in determining the appropriate amount of alimony that Husband should be required to pay under the facts of this case;

2. Should Wife be granted her reasonable attorney's fees and costs incurred as a result of this appeal.

For the following reasons, we reverse the decision of the chancery court, reinstate the previous alimony award, dismiss the petition for modification, and remand for further proceedings.

## III. STANDARD OF REVIEW

"Because modification of a spousal support award is factually driven and calls for a careful balancing of numerous factors, a trial court's decision to modify support

3

payments is given wide latitude within its range of discretion." *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quotations omitted). On appeal, we are "generally disinclined to second-guess a trial judge's spousal support decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). "[T]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Id.* (citing *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006)). We will find an abuse of discretion "when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)).

## IV. DISCUSSION

This case involves an award of alimony in futuro. This type of alimony "is intended to provide support on a long-term basis until the death or remarriage of the recipient." *Gonsewski*, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(f)(1)). Alimony in futuro can be awarded "when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." Tenn. Code Ann. § 36-5-121(f)(1). In other words, alimony in futuro is appropriate when one spouse "is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse[.]" Tenn. Code Ann. § 36-5-121(f)(1).[2]

An award of alimony in futuro remains in the court's control for the duration of the award and "may be increased, decreased, terminated, extended, or otherwise

---

[2]In *Gonsewski*, the Tennessee Supreme Court explained that

> Alimony in futuro "is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." *Riggs* [*v. Riggs*, 250 S.W.3d 453, 456 n. 2 (Tenn. Ct. App. 2007)]. In many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. *Robertson* [*v. Robertson*, 76 S.W.3d 337, 340 (Tenn. 2002)]. While enabling the spouse with less income "to maintain the pre-divorce lifestyle is a laudable goal," the reality is that "[t]wo persons living separately incur more expenses than two persons living together." *Kinard* [*v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)]. "Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle...." *Id.*

*Gonsewski*, 350 S.W.3d at 108.

modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). The party seeking modification of the alimony award "bears the burden of proving that a substantial and material change in circumstances has occurred." *Wiser v. Wiser*, 339 S.W.3d 1, 12 (Tenn. Ct. App. 2010) (citing *Freeman v. Freeman*, 147 S.W.3d 234, 239 (Tenn. Ct. App. 2003)). "'[W]hether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court.'" *Bogan*, 60 S.W.3d at 727 (quoting *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999)).

It is well-settled that "when an obligor's retirement is objectively reasonable, it does constitute a substantial and material change in circumstances - - irrespective of whether the retirement was foreseeable or voluntary - - so as to permit modification of the support obligation." *Bogan*, 60 S.W.3d at 729. However, it is equally clear that "an obligor cannot merely utter the word 'retirement' and expect an automatic finding of a substantial and material change in circumstances. Rather, the trial court should examine the totality of the circumstances surrounding the retirement to ensure that it is objectively reasonable." *Id.* In the case before us, the trial court found that Husband "retired at sixty seven (67) years of age from the practice of law," but the court did not make any finding regarding whether Husband's retirement was objectively reasonable. On appeal, Wife seems to imply that Husband's retirement either was not "bona fide" or was not objectively reasonable, noting that he maintained his law license in "active" status and continued to advertise his services as a mediator. Husband testified that he officially closed his law office on March 1, prior to the filing of his petition for modification on May 31, 2013. He testified that he would be interested in doing mediation work but said he had not received any calls for such work. Husband testified that his law practice essentially "dried up" because his work was primarily worker's compensation cases involving employees of Northwest/Delta, and Northwest/Delta no longer maintained a workforce in Memphis. He testified that he experienced periods of several months without any new clients, and he did not earn enough to cover his overhead during the last five months he practiced. Husband also testified that he shared office space and expenses with a gentleman who was retiring, and the building they leased had been sold, so in order to continue practicing he would have been required to lease a new office and hire new staff. Husband was 67 years old and dealing with some health issues. Considering these circumstances, Husband's retirement was bona fide and objectively reasonable. We also hold that Husband's retirement constituted a substantial and material change in circumstances since the last modification of the alimony obligation. *See Bogan*, 60 S.W.3d at 725 ("a bona fide retirement need only be objectively reasonable under the totality of the circumstances to constitute a substantial and material change in circumstances"). However, this finding does not end our inquiry.

"[E]ven when an obligor is able to establish that a retirement is objectively

reasonable, and therefore that it constitutes a substantial and material change in circumstances, the obligor is not necessarily entitled to an automatic reduction or termination of his or her support obligations." *Bogan*, 60 S.W.3d at 730. The alimony statute provides that an award of alimony in futuro "may" be modified upon a showing of a substantial and material change in circumstances. Tenn. Code Ann. § 36-5-121(f)(2)(A). "As evidenced by its permissive language, the statute permitting modification of support awards contemplates that a trial court has no duty to reduce or terminate an award merely because it finds a substantial and material change in circumstances." *Bogan*, 60 S.W.3d at 730. Instead, the change in conditions resulting from retirement merely allows the obligor the opportunity to demonstrate that reduction or termination of the award is appropriate. *Id.* The "actual modification of the award, if any, is addressed to the trial court's discretion after considering the relevant factors listed in Tennessee Code Annotated section 36-5-[121(i)]."[3] *Id.* at 727. Although the statute lists numerous factors for consideration, "the two most important considerations in

---

[3]Tennessee Code Annotated section 36-5-121(i) provides:

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property, as defined in § 36-4-121;
(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

6

modifying a spousal support award are the financial ability of the obligor to provide for the support and the financial need of the party receiving the support." *Id.* at 730.

In the case at bar, the trial court made few findings to justify its decision to modify Husband's alimony obligation. The order states, in pertinent part:

> [Husband] has retired at sixty seven (67) years of age from the practice of law. That the [Husband's] only income comes from a retirement account of approximately $5,500.00 per month and social security of $2,500.00 a month for a total of $8,000.00 per month. That the evidence introduced indicates that [Husband] was earning approximately $271,000.00 per year at the time of the previous modification of alimony setting that amount at $2,870.00 per month and he is now earning approximately $98,000.00 per year. That [Husband] has suffered at least a 2/3's decrease in income and therefore the alimony in futuro heretofore awarded should be modified to the sum of $1,035.00 per month effective January 1, 2014.
> IT IS, THEREFORE, ORDERED ADJUGED AND DECREED that [Husband's] obligation for the payment of alimony in futuro to [Wife] is reduced effective January 1, 2014 to the amount of $1,035.00 per month beginning January 1, 2014.

We perceive two flaws in the trial court's analysis. First, the trial court found that Husband was earning $271,000 per year at the time of the previous modification of alimony when the obligation was set at $2,870 per month. This finding is factually incorrect. When the alimony obligation was reduced to $2,870 in 2004, the trial court found that Husband's income was approximately $273,000 *at the time of the divorce*, and during the past five years, it had averaged $221,894, for a reduction of 18 percent. Therefore, at the time of the previous modification of alimony, Husband was earning around $221,894 (not $271,000 as the trial court found). Husband did not experience a "2/3's decrease" in income from $271,000 to $98,000; instead, his income decreased from $221,894 to $98,000.

The second flaw in the trial court's analysis is its sole reliance on Husband's decrease in income as the basis for modifying the alimony obligation. The trial court did not make any findings regarding Husband's expenses, Wife's income, Wife's expenses, or any other factors relevant to setting an alimony obligation. After the trial judge announced his oral ruling that Husband's alimony obligation would be modified, counsel for Wife asked for clarification regarding whether the trial judge found an inability to pay or a mere decrease in income. The following exchange ensued:

> [Wife's attorney]:   Are you finding specifically that he lacks the ability to

pay?

THE COURT: No, I'm finding that his income has been reduced from -- by two-thirds, from what it was the last time in which the Court heard the matter.

[Wife's attorney]: Okay. So you're not finding that he has the inability to pay?

THE COURT: No. He has --

[Wife's attorney]: Okay. And --

THE COURT: -- the ability to pay the one thousand thirty-three twenty.

[Wife's attorney]: But does he --

THE COURT: The 1,035 dollars.

[Wife's attorney]: The question that I'm asking Your Honor is are you finding that he has the inability to pay the 2870 that was previously awarded?

THE COURT: The inability -- I – I'm finding that his income has been substantially reduced –

[Wife's attorney]: I understand.

THE COURT: -- and that the amount of his obligation for payment of alimony in futuro is consistently reduced by the same percentage as his income.

The trial judge added, "there is no indication that either of these parties have the same ability to pay or the needs, but the fact of the matter is that the history of this case showed that the award of alimony has been based primarily on [Husband's] income, which has been substantially reduced by two-thirds." The judge concluded by stating, "the Court is really not addressing the ability to pay, except the -- the income upon which the alimony is based, you know."

The trial court applied an incorrect legal standard, and therefore abused its

discretion, by focusing solely on Husband's income. Deciding whether an obligor has the ability to provide spousal support requires consideration of more than the obligor's income. *See, e.g.*, *Evans v. Young*, 280 S.W.3d 815, 827 (Tenn. Ct. App. 2008) (finding that an obligor still had the "ability to pay" the same level of alimony despite his retirement and significant reduction in income). A decrease in income "should not be viewed in a vacuum." *Proctor v. Proctor*, No. M2006-01396-COA-R3-CV, 2007 WL 2471504, at *5 (Tenn. Ct. App. Aug. 31, 2007). To the contrary, we must consider the obligor's "ability to pay" the alimony obligation, which can be impacted by a variety of factors. *Id.* "Income is but one of the factors to be considered." *Id.* The obligor's expenses are another important factor for consideration. *Id.* Moreover, "the trial court should carefully consider the relevant factors of Tennessee Code Annotated section 36-5-[121(i)] in deciding by what amount, if any, the award should be modified." *Bogan*, 60 S.W.3d at 734. The need of the receiving spouse cannot be overlooked; it is "an important consideration in modification cases." *Id.* at 730.

Because the trial court applied an incorrect legal standard and erred in its factual findings, we have thoroughly reviewed the evidence to determine whether modification of Husband's alimony obligation was appropriate. Based on our review of the record, we find that Husband failed to meet his burden of demonstrating that modification of his alimony obligation was appropriate. Even though Husband experienced a decrease in income due to his retirement, he was still receiving approximately $8,166 per month from social security and retirement benefits. His retirement funds were valued at around $1.2 million. Husband testified that he decided how much to withdraw from his retirement accounts by using online formulas and annuity tables based on his life expectancy. He acknowledged that if he continued his current level of withdrawals from his retirement accounts (paying Wife's *existing* level of alimony), his retirement funds would last until his mid-eighties, which corresponds to his life expectancy. He added that the value of his portfolio could change based on the stock market.

Despite Husband's burden of proof, he did not produce any evidence of his monthly expenses in an effort to demonstrate an inability to pay his current level of alimony.[4] In fact, the limited evidence regarding Husband's expenses showed that his current monthly income enabled him to pay Wife's alimony and all of his expenses without going into debt. Husband was paying the bulk of the household expenses for himself and his new wife, who was 49 years old and had accepted a voluntary buyout that enabled her to retire during the same month as Husband. He testified that his new wife was paying about 40 percent of the household bills. Husband's testimony indicated that his monthly expenses included considerable discretionary spending. He was voluntarily

---

[4]"The person seeking modification must establish that modification is warranted." *Bordes v. Bordes*, 358 S.W.3d 623, 626-27 (Tenn. Ct. App. 2011).

9

paying off his daughter's student loan, which totaled $20,000, and he said he had always paid "everything" for his children, including "tuition, clothes, cars, health insurance, education, whatever it is, plane tickets, I paid for it." Husband was asked about his deposition testimony in which he estimated that he and his wife spend $1,500 per month on groceries. He responded,

> All right. You asked me a bunch of questions about expenses in the deposition. . . . And to be honest with you, I wasn't prepared to answer those because I only thought the only issue involved in this was the fact that my income had dropped while I was -- a significant amount and the fact that my ex-wife had done nothing in terms of rehabilitation.

Still, even at the hearing on Husband's petition for modification, he was unable to provide evidence regarding his expenses. He testified, "I would be guessing at what each expense is. . . . I couldn't break down exactly what my expenses are." Husband did say that after he pays his bills at the beginning of the month, he has less than $1,000 in the bank, so he waits until he receives his social security check to pay Wife's alimony. He said he had been charging some expenses to credit cards, but he also acknowledged that he is able to pay off the credit card balances at the end of every month. Husband claimed that he and his wife "cut back" on some "social things" but were still able to pay all of their bills. Husband's lifestyle indicated that he had no trouble paying for luxuries in addition to meeting his obligations. Husband testified that he had been traveling to France every year "for years," and he rents an apartment there because it doesn't cost "much." When asked about his deposition testimony that he spends $6,000 per year on travel, Husband said, "If I did, that's fine. I mean, I wouldn't know. That's a possibility." Our review of the evidence presented leads us to conclude that Husband still has the financial ability to pay Wife's current level of alimony in the sum of $2,870 per month.

Consideration of Wife's financial need also weighs in favor of leaving the alimony obligation undisturbed. Wife was 69 years old at the time of trial. Her most recent full-time employment was in 2009 when she worked as a secretary at a ballet school, earning $22,728 annually. She testified that the ballet school "let [her] go" when a new executive director was hired and brought in his own staff. In 2010, Wife earned $3,585; in 2011, she earned $1,023; and in 2012, she earned $312. Wife testified that she had a real estate license "[a] long time ago" but did not renew it because she was not good at selling real estate.[5] She testified that she had inquired about working at some real estate agencies

---

[5]Husband also testified as to some jobs Wife held in the past, but it is not clear from his testimony whether all of these jobs were prior to the parties' marriage. He said, "before we were married, she owned a ballet school for a number of years. It was hers. She ran a restaurant that her brother and father had purchased for a number of years." He also mentioned that she was an executive assistant at another company but acknowledged that she ceased working at some point during the marriage.

without much success. She had been working at a real estate company for $12 an hour, but she was replaced by someone with an accounting degree. At the time of trial, Wife was working at a yarn store approximately three to six hours per week. Wife attributed her lack of meaningful employment to her age, some health issues, her lack of education, and the high unemployment rate. Wife had begun drawing social security benefits in the past year and was receiving around $1,150 per month after her Medicare costs were deducted. Aside from her social security benefit, alimony payment, and minimal paycheck, Wife had no other source of income. She had no savings and no retirement.

Wife testified that her monthly rent was $840, which included the cost of her utilities. She testified that she lives "[v]ery frugally" and is unable to afford vacations or other luxuries. She acknowledged that she had recently visited the parties' daughter in Portland but said her daughter purchased her plane ticket because Wife was unable to afford it. When asked whether her monthly expenses had decreased since the last hearing, Wife simply said, "I can promise you it's less. I don't do anything extra." She said she "had to tighten up." Wife testified that some months she has a deficit, and some months she has a surplus, but she uses any surplus to pay on a $150,000 tax debt she owes to the IRS or for attorney's fees from defending against Husband's petitions to modify "every couple of years." She also had $1,000 in credit card debt. She testified that if her alimony was significantly reduced, she would have to live with one of her children. When asked about her net worth, Wife said, "I don't really have anything" besides thirty-year-old furniture and an old car. These facts demonstrate that Wife had continued financial need for her current level of alimony. Husband is correct in his assertion that Wife's expenses had decreased in an unspecified amount since the previous order reducing her alimony payment. However, considering the totality of the circumstances, this fact does not require a further decrease in her alimony payment. *See Richards v. Richards*, No. M2003-02449-COA-R3-CV, 2005 WL 396373, at *11 (Tenn. Ct. App. Feb. 17, 2005) ("Wife's frugality should not be held against her."); *Claiborne v. Claiborne*, No. C/A 744, 1988 WL 5684, at *2 (Tenn. Ct. App. Jan. 29, 1988) (declining "to penalize wife for being prudent and frugal").

In sum, we hold that Husband's retirement constituted a substantial and material change in circumstances, but Husband failed to prove that the change in circumstances significantly diminished his financial ability to pay alimony or Wife's need for it. "[E]ven a material change of circumstances does not necessarily require a reduction of alimony, if the payor still has the ability to pay the support awarded and the need of the payee has not diminished." *Willet v. Taeubel*, No. E2014-00364-COA-R3CV, 2014 WL 5812338, at *8 (Tenn. Ct. App. Nov. 10, 2014). Despite Husband's retirement, he is financially able to continue to pay spousal support at pre-retirement levels. We reverse the trial court's reduction of alimony to $1,035 and reinstate the previous spousal support order setting Husband's monthly obligation at $2,870. If Husband has been paying

$1,035 during the pendency of this appeal, Wife is entitled to recover the difference between what Husband actually paid and what he would have owed if the obligation remained at $2,870.

Finally, we consider Wife's request for an award of her attorney's fees and expenses on appeal. Tennessee Code Annotated section 36-5-103(c) provides for awards of "reasonable attorney fees incurred in enforcing any decree for alimony," in the discretion of the court. Pursuant to this statute, a court may award attorney's fees to an alimony recipient who is forced to defend an action to reduce or terminate that alimony. *Henderson v. Henderson*, No. M2013-01879-COA-R3-CV, 2014 WL 4725155, at *12 (Tenn. Ct. App. Sept. 23, 2014) (citing *Evans v. Evans*, M2002-02947-COA-R3-CV, 2004 WL 1882586, at *13-14 (Tenn. Ct. App. Aug. 23, 2004)); *see also Owens v. Owens*, No. M2012-01186-COA-R3-CV, 2013 WL 3964793, at *6 (Tenn. Ct. App. July 30, 2013) *perm. app. denied* (Tenn. Nov. 13, 2013) ("Reasonable fees may be awarded pursuant to § 36-5-103(c) in actions to enforce a decree for alimony, which has been interpreted as including the situation where an alimony recipient is forced to defend an action to reduce or terminate that alimony."). The statute authorizes awards of attorney's fees incurred at trial as well as on appeal. *Henderson*, 2014 WL 4725155, at *12. The decision of whether to award attorney's fees incurred on appeal is a matter within the discretion of this Court. *Yattoni-Prestwood v. Prestwood*, 397 S.W.3d 583, 597 (Tenn. Ct. App. 2012) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995); *Seaton v. Seaton*, 516 S.W.2d 91, 93 (Tenn. 1974)). We have previously recognized that

> "Alimony is only awarded in the first instance to an economically disadvantaged spouse who has a demonstrated need for the support. Absent a showing in a modification proceeding that the need no longer exists, requiring the recipient to expend that support for legal fees incurred in defending it would defeat the purpose and public policy underlying the statute on spousal support. Additionally, the possibility of being burdened with a former spouse's attorney's fees helps deter unwarranted or unjustified attempts by an obligor to evade or reduce an existing support obligation."

*Henderson*, 2014 WL 4725155, at *12 (quoting *Evans*, 2004 WL 1882586, at *13).

Considering these observations, in addition to the nature of the issues involved in the instant litigation, the respective financial positions of the parties, and Wife's success on appeal, we conclude it is appropriate to exercise our discretion to grant Wife's request for an award of her reasonable attorney's fees and expenses for appellate work. On remand, the trial court will set these fees.

## V.   CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby reversed, the previous alimony award is reinstated, the petition for modification is dismissed, and this matter is remanded for further proceedings.  Costs of this appeal are taxed to the appellee, Reed Lynn Malkin, for which execution may issue if necessary.


_____
BRANDON O. GIBSON, JUDGE