IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 13, 2022 Session

## DEANNA LYNN AKERS v. NEIL E. POWERS

Appeal from the Circuit Court for Bradley County
No. V-13-589      Lawrence Howard Puckett, Judge
_____

No. E2021-01028-COA-R3-CV
_____

Deanna Lynn Akers ("Wife") and Neil E. Powers ("Husband") were divorced by the Circuit Court for Bradley County (the "trial court") in 2016. Wife was awarded $1,100.00 per month in alimony in futuro. Following a slew of post-trial motions and proceedings, Husband filed a petition to terminate Wife's alimony on August 6, 2019. A hearing was held after which the trial court terminated Wife's alimony and entered a judgment against Wife for the overpaid amount. Because the trial court erred in terminating Wife's alimony altogether, the trial court's decision is vacated and remanded for reinstatement of Wife's in futuro support. Because Husband established, however, a substantial and material change in his earning ability, a modification of the amount of alimony is appropriate and should be determined by the trial court on remand.

**Tenn. R. App. P. 3; Judgment of the Circuit Court for Bradley County Vacated and Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Sheridan C.F. Randolph, Cleveland, Tennessee, for the appellant, Deanna Lynn Akers.

Arthur Bass, Cleveland, Tennessee, for the appellee, Neil E. Powers.

## OPINION

The parties were married for approximately seventeen years prior to their divorce. The divorce trial was held on April 8, 2016, but a final order was not entered right away. Rather, Wife filed a motion soon thereafter, on May 6, 2016, requesting the trial court "re-open the proof" and award Wife increased spousal support. This motion was apparently

heard on May 31, 2016 and denied; an order was not entered denying that motion until November 2, 2016.

The final decree of divorce was not entered until August 2, 2017. Husband was ordered to pay Wife $1,100.00 per month alimony in futuro.[1] On September 12, 2017, Wife filed a "motion to enforce" Husband's alimony obligation, asking for a judgment in an unspecified amount for unmade payments. Wife also requested that the trial court alter or amend the final decree to award Wife increased support. A hearing was held on November 2, 2017, at which Wife's motion to alter or amend was determined untimely and the parties were ordered to mediate.

No order was entered after the November 2, 2017 hearing, however, and Wife filed a motion on June 4, 2018, asking that one be entered. In her June 4, 2018 motion, Wife again requested increased spousal support, this time specifying that her need was due to health problems. Wife testified at the trial of this matter that she has lupus and Sjogren's disease, among other issues. Husband responded that the parties had been previously ordered to mediate. Eventually, on July 25, 2018, the trial court entered an order *nunc pro tunc* as to the November 2, 2017 hearing, confirming that the parties were to mediate the alimony issue. Although what came of the mediation is unclear from the record, the parties were apparently unable to settle the dispute.

On August 6, 2019, Husband filed a motion to "terminate the alimony payments which he is currently required to pay to [Wife,]" citing an involuntary change in employment. The modification hearing then took place over several non-consecutive days in August and October of 2019.[2] The primary issues at the hearing were both parties' deteriorating health, Husband's changing employment, and Wife's cohabitation with both a paramour, Darrell Hawkins, and renters. The hearing concluded on October 22, 2019, and the trial court entered a final order on January 28, 2020. The trial court's ruling is best summarized by quoting the final page of its order:

> The Court finds [Wife's] need is -0- dollars per month since she
> started receiving Social Security in December 2018, took in boarders and

---

[1] The final decree itself is not in the record. It is undisputed, however, that Husband was ordered to pay Wife $1,100.00 per month in alimony in futuro. Additionally, in the final order on this modification proceeding, the trial court included the findings as relevant from the underlying divorce proceeding, including the trial court's application of the statutory alimony factors.

[2] There was confusion at trial over which party was the petitioner and which party was the respondent for purposes of the modification, insofar as both parties sought changes to the spousal support and multiple pleadings had been filed regarding same. Ultimately the parties and the trial court agreed that Husband was the petitioner for purposes of the modification action. In the transcript, both the parties and the trial court refer to Husband's modification petition as having been filed on April 6, 2018. No such petition is in the record, however, and the only motion for modification filed by Husband that is in the record was filed August 6, 2019. Consequently, we treat the August 6, 2019 petition as the operative motion.

lived with Mr. Hawkins with him working as a cook and disc jockey while drawing nine hundred dollars ($900.00) per month in Social Security Disability. [Husband] has overpaid alimony by paying the one thousand, one hundred ($1,100.00) per month previously ordered from December 2018 to the date of this order when [Wife] had no need.

Further, based upon [Husband's] reduced ability to pay because of his declining health and income and his increased tax burden, he had no ability to pay alimony in 2019 going forward because of these material and substantial changes in his finances found by the Court. [Husband] continues to lack the ability to pay alimony because he has no retirement funds available from which to do so as he had in 2018 and 2019.

Because this ruling results in an overpayment of alimony by [Husband], a separate order shall be entered setting [Husband's] overpayment of alimony.

Counsel for the parties shall calculate and/or agree upon the overpayment and submit their proposed order of overpayment to the Court for approval or shall set this issue for trial.

The previous alimony of one thousand, one hundred dollars ($1,100.00) per month [Husband] was ordered to pay is hereby modified and terminated as of December 2018.

Wife filed a motion to alter or amend the trial court's ruling in February of 2020.[3] The trial court deemed this motion premature, however, because the parties still had to address Husband's overpayment. On May 6, 2021, the trial court entered an order providing that Husband overpaid Wife alimony from December of 2018 through January of 2020 and entered a judgment against Wife for $16,095.04. The trial court then entered an order denying Wife's motion to alter or amend that was filed in February of 2020. Wife appealed to this Court.

## ISSUES

Wife frames her issues on appeal as follows:

1. Where a party's income is several multiples than a disadvantaged spouse's, and debts are largely of his own making, does a spouse making over $11,000 per month have ability to pay alimony of $1,100 per month?

---

[3] The file stamp date on this motion is indiscernible.

2. Where a disadvantaged spouse's health condition has deteriorated, and her income is diminished since the divorce decree, and she presently lives alone, should her alimony be terminated?

3. If a private investigator gives the only evidence of cohabitation, rebutted by testimony, and that testimony is hearsay, permitted in error over objection, and that investigator has been impeached, is it an abuse of discretion to deny alimony on the basis of that evidence?

While Wife presents her argument as three separate issues, she essentially challenges the trial court's decision to terminate her alimony based upon several purported substantial and material changes in circumstance.

## DISCUSSION

The dispositive issue here is whether the trial court correctly concluded that Wife's alimony should be terminated.

> "Because modification of a spousal support award is factually driven and calls for a careful balancing of numerous factors, a trial court's decision to modify support payments is given wide latitude within its range of discretion." *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quotations omitted). On appeal, we are "generally disinclined to second-guess a trial judge's spousal support decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). "[T]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Id.* (citing *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006)). We will find an abuse of discretion "when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)).

*Malkin v. Malkin*, 475 S.W.3d 252, 257 (Tenn. Ct. App. 2015). With regard to factual findings, "we will presume the correctness of these findings so long as the evidence does not preponderate against them." *Bogan*, 60 S.W.3d at 727 (citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)). In this case, Wife was awarded alimony in futuro, which is appropriate when "the court finds that there is relative economic disadvantage and that rehabilitation [of the receiving spouse] is not feasible." Tenn. Code Ann. § 36-5-121(f)(1). "An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified,

upon a showing of substantial and material change in circumstances." *Id.* § 36-5-121(f)(2)(A).

A party seeking modification of spousal support bears the burden of "'proving that a substantial and material change in circumstances has occurred.'" *Malkin*, 475 S.W.3d at 258 (quoting *Wiser v. Wiser*, 339 S.W.3d 1, 12 (Tenn. Ct. App. 2010)). A change in circumstance is "material" when it "(1) occurred since the entry of the divorce decree ordering the payment of alimony, and (2) was not anticipated or within the contemplation of the parties at the time they entered into the property settlement agreement[.]" *Bogan*, 60 S.W.3d at 728 (quotation and bracketing omitted). A change is "substantial" if "it significantly affects either the obligor's ability to pay or the obligee's need for support." *Id.* (citing *Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991)).

A substantial and material change is only the "first hurdle" in seeking an alimony modification. *Himes v. Himes*, No. M2019-01344-COA-R3-CV, 2021 WL 1546961, at *4 (Tenn. Ct. App. Apr. 20, 2021). Modification is within the trial court's discretion, and the party requesting the modification must also demonstrate that the modification is warranted. *Id.* (citing *Bogan*, 60 S.W.3d at 730). While the analysis is "factually driven and calls for a careful balancing of numerous factors," *Cooley v. Cooley*, 543 S.W.3d 674, 682 (Tenn. Ct. App. 2016), "the two most important considerations in modifying a spousal support award are the financial ability of the obligor to provide for the support and the financial need of the party receiving the support." *Bogan*, 60 S.W.3d at 730 (citing *Givler v. Givler*, 964 S.W.2d 902, 906 (Tenn. Ct. App. 1997)). As opposed to an initial spousal support determination, "the need of the receiving spouse cannot be the single-most dominant factor[;]" rather, "the ability of the obligor to provide support must be given at least equal consideration." *Bogan*, 60 S.W.3d at 730; *see also McCormick v. McCormick*, No. W2019-00647-COA-R3-CV, 2020 WL 1042500, at *5 (Tenn. Ct. App. Mar. 4, 2020) ("[W]hile the need of the disadvantaged spouse is often the single most important factor in an initial alimony award, this is not the case in the context of a modification of alimony.").

The trial court's decision to modify, and in fact terminate, Wife's alimony was based primarily upon two purported changes: 1) Wife's cohabitation with Mr. Hawkins and other roommates, and 2) Husband's deteriorating health and resultant decreased income.

We turn first to the issue of Wife's cohabitation. Cohabitation with third persons[4] can be a basis for modification of alimony in futuro:

> (B) In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that:

---

[4] The term "third person" for purposes of modification is not limited to romantic partners. *Hickman v. Hickman*, No. E2013-00940-COA-R3-CV, 2014 WL 786506, at *6 (Tenn. Ct. App. Feb. 26, 2014) (collecting cases).

(i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or

(ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

Tenn. Code Ann. § 36-5-121(f)(2). Once the presumption arises, "the burden of proof shifts to the alimony recipient to demonstrate a continuing need for the full amount of the alimony award despite the cohabitation." *Strickland v. Strickland*, 644 S.W.3d 620, 629 (Tenn. Ct. App. 2021) (citing *Hickman*, 2014 WL 786506, at *7);[5] *Howard v. Beasley*, No. W2019-01972-COA-R3-CV, 2020 WL 6149577, at *3 (Tenn. Ct. App. Oct. 20, 2020) ("[A]limony is not automatically terminated upon the recipient spouse cohabitating with a third person."). "Previously, recipient spouses have rebutted the presumption by showing a deficit of funds despite the third-party's support or cohabitation." *Howard*, 2020 WL 6149577, at *3 (collecting cases).

Here, the trial court determined that Wife's alimony should be terminated altogether due to her cohabitation with Mr. Hawkins as well as third persons to whom Wife was renting rooms in her home. We conclude, however, that this was erroneous for multiple reasons.

First, regarding Mr. Hawkins, cohabitation was not a substantial and material change in circumstances because Mr. Hawkins resided with Wife when the spousal support was initially awarded. In its modification order the trial court quoted the following findings from the underlying divorce trial:

Now, there's another factor I need to consider here, and that is Subsection (f)(1). Yes.

---

[5] Several cases cited in this opinion address modification of transitional alimony. However,

[t]his Court has previously explained [] that appellate decisions applying the law regarding the statutory cohabitation provision for alimony in futuro, Tenn. Code Ann. § 36-5-121(f)(2)(B), are applicable when analyzing the cohabitation statute for transitional alimony because the statutes contain identical language.

*Strickland*, 644 S.W.3d at 630 n.2. Accordingly, cases addressing modification of transitional alimony are applicable here.

"In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that the third person - - there's two options. Either the third person is contributing to the support of the alimony recipient; in other words, Mr. - - what's his name? Yaweh[6] [sp]? That's almost blasphemous, you know, every time I heard that.

But any way, that he is contributing to her support because he's living with her and, therefore, she doesn't need the amount of support previously awarded. The amount. It doesn't say "doesn't need any alimony." It can be adjusted. And it's a rebuttal [sic] presumption, and the Court should suspend all or part of the alimony obligation of the spouse.

"Or that a third person is receiving support from the alimony recipient" - - in other words, she's keeping him up, which means that she's got enough money that she doesn't need to have alimony, and - - "therefore, the Court should suspend all or part."

Well, he makes about $900 in disability payments. And that's [sic] doesn't mean somebody that's disabled doesn't go out and work. I'm not that unschooled in the disability world. But at least - - I think the fair thing to do is - you know, this is the best call I can make, is that you would pay $1,100 a month in alimony and credit $900 coming from her boyfriend or live-in friend, whatever. I think that's what the law would allow and would require.

Accordingly, the trial court was aware of Wife's cohabitation with Mr. Hawkins when the original alimony award was made and concluded that Wife needed support regardless. To that point, the trial court later expounded in its modification order:

When the Court made its alimony award in this case after trial on April 8, 2016, the transcript of the Court's ruling included the Court's finding that Mr. Hawkins was living/cohabitating with [Wife] and that he was contributing nine hundred dollars ($900.00) per month, which was his social security income, toward her expenses reducing her need thereby to one thousand, one hundred eight dollars ($1,108) per month. (Judge's Ruling April 8, 2016, at 25-27). The preponderance of the evidence supports the Court finding that [Wife's] living arrangement with Mr. Hawkins continues and he is contributing to her household expenses at least nine hundred dollars ($900.00) per month. Evidence that he is working as a cook and "D.J." was from private investigator, Danielle Cory to which [Wife's] counsel objected. Absent proof as to Mr. Hawkins' income above Social Security, the Court finds that Mr. Hawkins is continuing to contribute at least nine hundred

---

[6] Mr. Hawkins also goes by and is referred to in the record as "DJ Yahweh."

dollars ($900.00) per month toward [Wife's] expenses[.]

    \*        \*        \*

In the case before this court it would be a change of circumstances if the Court found Mr. Hawkins was no longer living with [Wife] because the Court's current alimony award is based in part upon the Court's previous finding that Mr. Hawkins and [Wife] were cohabitating and that he was contributing nine hundred dollars ($900.00) per month toward her support. In the divorce trial, the burden of proof on this issue shifted from [Husband] to [Wife] but in this modification action, [Husband] has the burden of proving that Mr. Hawkins is living with [Wife]. He has met his burden by proving their co-habitation. Therefore, Mr. Hawkins' contribution under Tenn. Code Ann. § 36-5-121 (f)(2)(B) is presumed unless rebutted by [Wife]. . . . [Wife] has not rebutted the statutory presumption that with Mr. Hawkins living in her home she does not need alimony. He is now working two jobs in addition to drawing disability.

Consequently, the trial court's decision to terminate Wife's spousal support was based in large part on her living with Mr. Hawkins. Nonetheless, this issue was already considered and decided in the previous trial and Wife prevailed. *See Naylor v. Naylor*, No. W2016-00038-COA-R3-CV, 2016 WL 3923790, at \*9 (Tenn. Ct. App. July 15, 2016) (explaining that "'the public policy expressed in the [cohabitation] statute is relevant to an initial alimony award[,]'" and that courts can consider evidence of cohabitation in such proceedings (quoting *Ezekiel v. Ezekiel*, No. W2014-02332-COA-R3-CV, 2015 WL 4916930, at \*8 (Tenn. Ct. App. Aug. 17, 2015))). With respect to alimony, "a trial court's final decree fixing alimony is res judicata as to all circumstances in existence at the time of the entry of said decree." *Malkin v. Malkin*, 613 S.W.3d 122, 139 (Tenn. Ct. App. 2019) (internal quotation and bracketing omitted); *see also Jekot v. Jekot*, 362 S.W.3d 76, 80 (Tenn. Ct. App. 2011) ("A change is considered material if the change occurred since the original support decree's entry." (citing *Byrd v. Byrd*, 184 S.W.3d 686, 691 (Tenn. Ct. App. 2005))).

From the record before us, it does not seem that Husband challenged the trial court's finding at the time or appealed the trial court's original alimony decision. As such, the fact that Wife cohabitates with Mr. Hawkins was inapposite for purposes of this modification proceeding, and the trial court erred in considering it. Insofar as the trial court misapplied the law in terminating Wife's alimony, it "cause[d] an injustice by applying an incorrect legal standard[.]" *Malkin*, 475 S.W.3d at 257. This was an abuse of discretion. *Id.*

In terminating Wife's alimony, the trial court also considered Wife's decision to rent the extra bedrooms in her home. Specifically, the trial court noted that "[Wife's] need is -0- dollars per month since she started receiving Social Security in December 2018, took

in boarders and lived with Mr. Hawkins[.]" It is true that cohabitation with persons other than romantic partners can also raise the presumption found at Tennessee Code Annotated section 36-5-121(f)(2)(B); in this particular case, however, the trial court erred because there was no evidence by the time of the hearing that Wife had renters and because outright termination of Wife's alimony was not the correct remedy under Tennessee Code Annotated section 35-6-121(f)(2)(B).

It is undisputed that Wife has rented rooms in her home intermittently since the divorce. There was no evidence presented, however, that Wife was renting the rooms by the time of the modification hearing. We have previously explained:

> An obligor spouse cannot rely on Tenn. Code Ann. § 36-5-121(f)(2)(B) to terminate or suspend alimony payments if the alleged cohabitation ceased before the modification petition was tried. The Court of Appeals addressed this issue in *Woodall v. Woodall*, 2004 WL 2345814 (Tenn. Ct. App. Oct. 15, 2004), and it explained:
>
>> [T]he situation that existed at the time of trial must be considered in applying the statute. That is because, first, the statute uses the present tense, "In all cases where a person is receiving alimony in futuro and the alimony recipient **lives** with a third person...." Tenn. Code Ann. § [36-5-121(f)(2)(B)] (emphasis added). Second, even if the presumptions of support and lack of need arise and are unrebutted, the court's remedy is to "**suspend** all or part of the alimony obligation," not terminate the alimony. Tenn. Code Ann. § [36-5-121(f)(2)(B)] (emphasis added). The clear implication is that if the situation justifying suspension ceases to exist, the alimony recipient may seek reinstatement or support from the former spouse.
>
> *Id.* at *5 (emphasis in original). The *Woodall* court continued, "We can see no authority for, and no purpose to be served by, requiring a ruling based on past cohabitation and the filing and hearing of a subsequent request for reinstatement when cohabitation ceases before the trial on the original modification petition." *Id.*

*Wiser v. Wiser*, No. M2013-02510-COA-R3-CV, 2015 WL 1955367, at *5–6 (Tenn. Ct. App. Apr. 30, 2015) (footnote omitted); *see also Gentry v. Gentry*, No. M2007-00876-COA-R3-CV, 2008 WL 275881, at *4 (Tenn. Ct. App. Jan. 31, 2008) (presumption created by section 36-5-121(f)(2)(B) did not arise where support recipient was no longer cohabitating with anyone before modification petition was filed).

Here, Wife testified that her home has two upstairs bedrooms. Since the divorce, Wife had one roommate who lived with her for approximately a year and a half and another

roommate who lived with her for only a few months.  Wife testified that she rents one room individually for $700.00 or both rooms for $1,000.00.  Husband presented testimony from a private investigator who posed as a potential renter in August of 2019 and visited the home.  According to the private investigator, only Wife and Mr. Hawkins were living in the home when she visited.  Accordingly, as of August 2019, Wife was looking for a renter but did not have one.  Wife testified at the modification hearing that she was not currently renting the rooms to anyone.

Further, the outright termination of Wife's alimony would not have been the proper remedy even if Husband had established that Wife was currently renting one or both of her rooms.  *Wiser*, 2015 WL 1955367, at *5–6; *see also Gregory v. Gregory*, No. M2015-01781-COA-R3-CV, 2016 WL 3662182, at *5 (Tenn. Ct. App. June 30, 2016) (quotation omitted) ("[U]nder the cohabitation statute, the court's remedy is to suspend all or part of the alimony obligation, not terminate the alimony. The clear implication is that if the situation justifying the suspension ceases to exist, the alimony recipient may seek reinstatement of support from the former spouse.").  Accordingly, the trial court erred in totally terminating Wife's alimony on the basis of Wife having renters in the past.

Finally, and perhaps most importantly, Wife demonstrated a need for support with or without extra income from renters.  Thus, assuming for purposes of argument that the presumption created by section 36-5-121(f)(2)(B) applies here, Wife rebutted the presumption at trial.  Wife was deemed disabled by the Social Security Administration in June of 2018 and does not work.  Husband presented no evidence that Wife is in fact able to work or is voluntarily unemployed.  She receives $1,200.00 per month in disability and testified that she has numerous health problems including lupus and Sjogren's disease.[7]  She receives $106.00 per month in food stamps.  Her income and expense sheet reflects modest expenses such as rent, a car payment, utilities, phone, and groceries, with her regular monthly expenses totaling $3,671.21.  If Wife were able to rent the two upstairs rooms in her home for $1,000.00 per month, which is by no means a guaranteed stream of income, Wife would still have a monthly deficit of at least $1,365.21.  Further, even with the inclusion of Mr. Hawkins' $900.00 per month contribution,[8] the deficit would be $465.21.  To that point, Wife and her mother both testified that Wife has borrowed over twenty-two thousand dollars from her mother since the divorce.  Wife's mother testified that she has been drawing the money out of her retirement account to help Wife.

Consequently, Wife's financial circumstances remain dire.  To the extent that the

_____

[7] While both parties claimed at trial that their changed circumstances were in large part due to deteriorating health, neither Husband nor Wife presented expert medical proof to support such claims. Nonetheless, the trial court was liberal in allowing each party to testify to their health problems and no one has raised an issue in this regard on appeal.

[8] Wife testified at trial that Mr. Hawkins no longer lived with her; the trial court did not credit this testimony, however, and determined that the evidence suggested Mr. Hawkins was still cohabitating with Wife.

rebuttable presumption created by cohabitation applies here, Wife rebutted the presumption at trial by demonstrating her ongoing need for support. *See Hickman*, 2014 WL 786506, at \*7 ("Tennessee courts have frequently held that an alimony recipient has rebutted the presumption by demonstrating continuing need, despite living with a third person and either receiving support from, or providing support to, the third person.").

Our role "'in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable.'" *Malkin*, 475 S.W.3d at 257 (quoting *Gonsewski*, 350 S.W.3d at 105). For all of the reasons addressed above, the trial court misapplied the applicable legal principles and reached an unreasonable result. Termination of Wife's alimony was therefore an abuse of discretion.

Our inquiry does not end here, however, as Husband maintains on appeal that in any event, he is entitled to a downward modification based upon his own health issues and resultant loss of income. Husband, who is a software developer, established at trial that since the divorce, he has been laid off and that his income is not commensurate with that of his income during the marriage. The trial court credited Husband's testimony that his decline in earning ability is due to health problems that limit his ability to work the same hours he did during the marriage. The trial court also considered these factors in terminating Wife's alimony, finding specifically as follows:

> [Husband's] health conditions are as follows: he is an insulin dependent diabetic with little pain sensitivity in his upper and lower extremities; he has cataracts and doesn't drive at night due to limited vision, he testified he feels pressure in his toes, feet, ankles and knees; he wears two braces on his left forearm and elbow and suffers pain from overuse of this extremity in his work. He is planning to have surgery. Since May 2019, he has seen four specialists. His left arm problems limit him to working one-half the seventy to eighty (70 to 80) hours he used to be able to work writing software. He is now limited to forty (40) hours per week or less. . . . He stresses that in his work he must be an accurate keyboard user. The Court credits [Husband's] testimony concerning his diminished work hours and loss of keyboarding capacity which is essential to his work life and impacts his income producing capacity.

> \*      \*      \*

> [B]ased upon [Husband's] reduced ability to pay because of his declining health and income and his increased tax burden, he had no ability to pay alimony in 2019 going forward because of these material and substantial changes in his finances found by the Court. [Husband] continues to lack the ability to pay alimony because he has no retirement funds

available from which to do so as he had in 2018 and 2019.

The record does not preponderate against the trial court's factual finding that Husband's health issues, specifically the chronic pain in his wrists and hands, have diminished his ability to work long hours. Husband writes software for a living and testified that his work requires him to keyboard accurately for several hours a day. Husband testified that he was laid off in August of 2018. His tax returns reflect that in 2016, the year the parties divorced, his adjusted gross income was $192,548.00. That figure has steadily decreased over the years; in 2017 it was $177,147.00; in 2018 it was $140,790.00; and in 2019 it was $132,190.00. Husband's ability to obtain jobs has also been unstable, and he testified that he has changed employers several times since being laid off. While Husband was able to work side jobs in the past, he can no longer do so to the same extent because he is unable to work the seventy to eighty hours per week he maintained during the marriage. Husband's accountant testified that given Husband's substantial debt[9] and increased medical expenses, including approximately $900.00 per month for insulin, he was projected to be in the red for 2019. At times, Husband had to withdraw money from retirement accounts in order to pay all of his expenses.

In short, while Husband is in a better financial position than Wife and has better earning potential overall, his financial situation has also declined since the divorce. Based upon the proof regarding Husband's health,[10] it also seems unlikely that Husband will soon resume earning the same amount of income he earned during the marriage. And because this is a modification proceeding as opposed to an initial spousal support determination, Husband's ability to provide support must be given at least equal consideration with Wife's need. *Bogan*, 60 S.W.3d at 730.

Consequently, although we conclude that Wife's alimony should not have been terminated altogether, we agree with the trial court that Husband's ability to pay $1,100.00 per month has undergone a substantial and material change since the parties' divorce. As such, some modification of Wife's spousal support is warranted. The trial court's ruling is therefore vacated and remanded for further proceedings. Because Wife's alimony should not have been terminated, the judgment against her for $16,095.04 for alimony paid from December 2018 through January 2020 is also vacated.

---

[9] The trial court noted in its final order that when the parties divorced, Husband was awarded most if not all of the parties' steep marital debt, including a $55,000.00 tax debt to the IRS. While the award of the debt in and of itself is not a substantial and material change in circumstances, it was established at trial that Wife had failed to cooperate in filing the appropriate tax returns and paperwork since the divorce and because of this failure, additional debt was incurred.

[10] The trial court credited the Husband's testimony as to the effect of Husband's health issues on his ability to find and hold jobs in his particular industry. Specifically, Husband testified that he was let go from at least one job because his arm and wrist pain kept him from working the long hours required. Absent clear and convincing evidence otherwise, we will not re-evaluate a trial court's determination based upon witness credibility. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

On remand, the trial court should apply the factors found at Tennessee Code Annotated section 36-5-121(i) to determine the appropriate amount of spousal support going forward. In its discretion, the trial court may conduct a new hearing at which additional proof may be presented as to this issue. The modified amount should apply retroactively to August of 2019 as that is when Husband filed the operative petition for modification.[11]

## CONCLUSION

The judgment of the Circuit Court for Bradley County is vacated and remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to the appellee, Neil E. Powers.

_____
KRISTI M. DAVIS, JUDGE

---

[11] Again, while the trial court treated the modification proceedings as reaching back to 2018, the record contains no pleading filed by Husband that supports this. The trial court should treat this modification proceeding as having been initiated on August 6, 2019.