# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 4, 2023 Session

## VANESSA COLLEY v. JOHN S. COLLEY, III

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Davidson County**
**No. 12D-314   Philip E. Smith, Judge**

---

**No. M2021-00731-SC-R11-CV**

---

In this case, we construe the parties' marital dissolution agreement, as well as Tennessee Code Annotated section 36-5-103(c), which permits attorney fee awards in certain original and post-award proceedings in family law cases involving alimony, child support, child custody, and permanent parenting plans. Here, the former husband filed a post-divorce petition to alter the award of transitional alimony, and after considerable litigation, he nonsuited it. The question on appeal under both the marital dissolution agreement and the statute is whether a trial court may award attorney fees to a former spouse for fees incurred in defending the original award of alimony in post-divorce proceedings, where the petition to modify the award was nonsuited before adjudication on the merits. We hold that it may. Under the marital dissolution agreement, our holding is based on the language of the parties' agreement. As to the statute, Tennessee Code Annotated section 36-5-103(c) explicitly applies in post-award proceedings to "enforce, alter, change, or modify" an existing decree of alimony, child support, custody, or a permanent parenting plan. Tenn. Code Ann. § 36-5-103(c). For an obligee spouse defending against an obligor spouse's effort to reduce or end alimony or child support, or modify a permanent parenting plan, the objective may be to maintain the status quo. This objective is achieved upon voluntary dismissal by the obligor spouse. Under these circumstances, the obligee spouse is a "prevailing party" under section 36-5-103(c). For this reason, we hold that trial courts may award attorney fees to an obligee spouse under the statute after the obligor spouse nonsuits a post-divorce petition. Accordingly, we reverse the Court of Appeals, affirm the trial court's award of attorney fees to the former wife, award the former wife attorney fees on appeal, and remand the case to the trial court for a determination of the amount of reasonable attorney fees.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Judgment of the Circuit Court Affirmed; Remanded to the Circuit Court**

HOLLY KIRBY, C.J., delivered the opinion of the Court, in which ROGER A. PAGE and DWIGHT E. TARWATER, JJ., joined. SARAH K. CAMPBELL, J. filed a separate opinion concurring in the judgment, in which JEFFREY S. BIVINS, J., joined.

Daniel A. Horwitz, Lindsay Smith, and Melissa K. Dix, Nashville, Tennessee, for the appellant, Vanessa Turner (formerly Colley).

P. Marlene Boshears, Franklin, Tennessee, for the appellee, John S. Colley, III.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; J. Matthew Rice, Associate Solicitor General & Special Assistant to the Solicitor General; and Philip Hammersley, Assistant Solicitor General, for the Amicus Curiae, State of Tennessee.


## OPINION

The question presented in this appeal involves only the award of attorney fees. A brief recounting of the factual and procedural background provides context for our analysis.

### FACTUAL AND PROCEDURAL BACKGROUND

Vanessa Turner, formerly Vanessa Colley ("Wife") and John S. Colley, III ("Husband") were divorced on July 18, 2012. They had three children, all minors at the time of the divorce. As a part of their divorce, Wife and Husband entered into a marital dissolution agreement ("MDA") and a permanent parenting plan that named Wife as the primary residential parent but gave them joint decision-making authority on educational matters. The MDA and the parenting plan were approved by the trial court and incorporated into the final decree.

Unfortunately, the divorce did not end the parties' litigation. Within a month after their 2012 divorce became final, the parties filed competing motions about where their youngest child would attend middle school, including cross-motions for injunctive relief. Though Wife, the primary residential parent, had moved to Williamson County and was substitute teaching in the Williamson County school system, Husband maintained that the youngest child should continue to attend school in Maury County. *Colley v. Colley*, No. M2014-02495-COA-R3-CV, 2016 WL 3633376, at *1–2 (Tenn. Ct. App. June 28, 2016).

Wife's motion was followed by a petition to modify the parenting plan to give her sole decision-making authority on educational matters. *Id.* at *2. Months of conflict ensued, with the child involved in the parents' disputes, culminating in an evidentiary hearing before the trial judge in which "the rancor between the parties clearly was evident." *Id.*[1]

After the hearing, the trial court entered an order in August 2013. *Id.* at *5. In the order, the court deemed Wife a credible and reasonable witness and found that Husband was honest but often unreasonable on the issues, so it credited Wife's testimony over the testimony of Husband. *Id.* at *7. The order denied Husband's request for injunctive relief.[2] It modified the parenting plan by giving Wife sole decision-making authority on educational matters. *Id.* The court awarded Wife $12,500 under the attorney fee provision in the parties' MDA. *Id.*

Several months after this ruling, Husband filed a motion for recusal of the trial judge, which was denied. *Id.* at *8. The recusal motion was followed by a petition to modify custody and child support. *Id.* Later, Husband filed a motion to hold Wife in contempt. *Id.* at *10. The contempt motion was denied and the trial court awarded Wife attorney fees for having to defend against it. *Id.*

Meanwhile, the parties engaged in discovery and preparation on Husband's pending petition to modify custody and child support. Ultimately, nearly a year and a half after it was filed, Husband nonsuited his petition. *Id.* at *8.

In the meantime, Husband, an attorney, filed an appeal of the trial court's August 2013 order. Representing himself on appeal, Husband raised numerous issues. *Id.* at *10. The Court of Appeals affirmed the trial court and awarded Wife her attorney fees on appeal pursuant to the MDA. *Id.* at *15. This Court denied Husband's request for permission for a further appeal. *Id.*, *perm. app. denied* (Tenn. Nov. 17, 2016).

Resolution of this first appeal did not end the litigation between the parties. Wife became engaged to remarry, with her marriage scheduled to take place in March 2019. In January 2019, Husband filed a petition to terminate Wife's transitional alimony, based on his allegation that Wife was cohabiting with her fiancé prior to her scheduled remarriage.

---

[1] The Court of Appeals later commented that the parents did not even agree on the name to call their youngest child; Husband referred to their daughter by her first name and Wife referred to her by a shortened version of her middle name. *Id.* at *2.

[2] Husband also filed a motion to compel a psychiatric evaluation of Wife. *Id.* at *5. That motion was transferred to another court by interchange where it was heard and denied by a different judge. *Id.* at *7.

*See* Tenn. Code Ann. § 36-5-121(g)(2)(C). In connection with termination of the transitional alimony, his petition also sought to modify the parties' MDA to terminate a related obligation, the requirement that Husband have Wife as a beneficiary on his life insurance policy in order to secure the required alimony. The petition also sought a judgment against Wife for reimbursement of interest and penalties incurred on the parties' 2010 federal tax return.[3] Husband's petition included a request for attorney fees and costs.

Wife filed her answer in February 2019 and an amended answer a month later. She admitted Husband had satisfied his child support and alimony *in solido* obligations. Wife agreed that the transitional alimony and the need for life insurance to secure that obligation would both end upon her remarriage in March. The answer said Wife would have agreed to an order ending the alimony and life insurance obligations upon remarriage had she been asked before Husband filed his petition. But she denied there was any basis to terminate alimony for the two-month period prior to her remarriage. As to Husband's claim for interest and penalties from the 2010 tax return, Wife raised the affirmative defense of laches[4] and said Husband had not shown "an IRS wrongdoing finding or any figure [Wife] owes the IRS."

Wife asked the trial court to dismiss Husband's petition and assess costs against him. She asked the trial court to award her "the reasonable attorney fees she incurred in being forced to defend this unnecessary action."

Wife's answer left two issues in dispute: (1) whether Husband owed alimony for the two-month period between the date he filed his petition and the date Wife was scheduled to remarry, and (2) whether Wife was liable for penalties and interest resulting from the parties' 2010 tax return. Discovery ensued.

Before long, Wife filed a motion for a protective order, seeking protection from discovery requests she maintained were overbroad and unnecessary. The discovery from which Wife sought protection included Husband's request that Wife "[p]roduce your current cellular phone, and any other cell phones you have used since January 1, 2018," to "[i]dentify all persons by name, address, employer, respective holiday, and phone number,

---

[3] Prior to the parties' divorce, the trial court denied Husband's motion to require Wife to sign an IRS installment agreement for the parties' 2010 tax debt. The trial court did so in order to permit Wife to preserve her claim for innocent spouse relief as to the tax liability, but the trial court's order also said if the IRS found no wrongdoing as to the 2010 tax return, Wife would be responsible for interest and penalties from the date of the order. Later, the parties agreed on an MDA that said Husband would "be responsible for paying the IRS debt for calendar year 2010."

[4] Husband's petition alleged he filed a motion regarding the IRS liability in 2016, but apparently it was never heard by the trial court.

who were present at [Wife's fiancé's address] on Thanksgiving and Christmas," and finally to "produce all photographs and videos taken at [Wife's fiancé's address] on Christmas and Thanksgiving." Wife called it "a fishing expedition by my ex-Husband" and cited Husband's "history of abusing proceedings to run up fees and to use the information obtained to harass her."

As to the request to relinquish her cell phone, Wife argued that Husband was seeking "huge amounts of private data completely unrelated to this litigation." Husband responded by claiming that the geolocation of Wife's phone and the photographs and videos on her phone were relevant.

In May 2019, the trial court granted Wife's motion for protective order in part. However, it ordered Wife to produce specific items.[5]

Mediation conducted in June 2019 failed. Wife filed a motion asking the trial court to set the matter for trial.

In December 2019, Wife filed a motion for clarification of the May 2019 order on Wife's motion for protective order. The motion recounted what she called Husband's history of "harassing" her through continued post-divorce litigation:

[T]his case has a very lengthy history, with numerous actions initiated by [Husband], who is an attorney himself . . . .

This current action is basically about two months of alimony paid by [Husband] prior to it being terminated given the March 2019 remarriage of [Wife] . . . and seeking to modify a final decree and suddenly to impose a non-existent judgment, all 7 years after the decree became final.

These parties were divorced on July 18, 2012; since that date 7 years ago, [Husband] has filed 6 post-divorce actions, the first less than a month after the divorce and the most recent (this one) on January 9, 2019—he has also pursued an unsuccessful appeal of one of the rulings of this Court, sought to have the Court recuse itself after ruling against him, and took a voluntary non-suit on one of his Petitions (to change custody) after forcing [Wife] to defend it for a year and a half.

---

[5] For example, the trial court ordered Wife to produce "printouts listing all text messages and telephone calls between her and her then fiancé," and "to provide copies of any videos, including audio, that she has taken of the said home."

[Husband] has also filed many Motions and other pleadings over the past 7 years, forcing [Wife] to stay in litigation with him almost on a non-stop basis since the divorce.

This history of [Husband] harassing [Wife] through the legal system has continued in this latest action; . . . [Husband] included a demand to set a judgment without any proof to support it and which was the subject of one of [Husband's] previous actions, but never pursued.

Addressing the specific relief sought in the motion—protection from having to give Husband contact information for her new in-laws, who were not involved with the parties' disputes—Wife further described Husband's post-divorce litigation practices:

[Wife] is particularly afraid to provide telephone numbers or even emails for these people, who are her now-husband's family with no relationship to this litigation; [Wife] believes that given the history of this matter, providing names and/or email addresses will lead to continued harassment, this time of her new in[-]laws.
. . . .
[Wife] reminds this Court, which has heard this case for years and years, that she has suffered an extensive history of harassment by [Husband], including being forced to block him from texting and/or calling her, having to report him to the Board of Professional Responsibility for his improper actions, believing it necessary even to file police reports on some of [Husband's] most egregious behavior, having to participate in an 8-hour deposition in a case that [Husband] then non-suited after causing her thousands in attorney fees, being hurt at her work by [Husband] intentionally serving her with process there, and costing her many thousands more in attorney fees for other harassment over the years, like negotiating agreements but then refusing to sign.

In response, Husband alleged Wife had not complied with the trial court's May 2019 order on his discovery requests and asked the trial court to order Wife to fully comply within fifteen days.

The trial judge held a hearing on Wife's motion in January 2020.[6]  In the order that followed the hearing, the trial judge apparently agreed with Wife's characterization of

---

[6] The trial judge, the Honorable Phillip E. Smith, had heard the parties' divorce as well as the post-divorce litigation.

Husband's post-divorce use of the legal system. The order said that Wife did not have to provide Husband any further information in response to his discovery requests, and added:

> The Court found that based on the filings in this case by [Husband], the arguments he has made, the evidence he has presented, [Husband] has been a bully and he has bullied [Wife] for years, which must end. Given that the case is not yet set for trial despite two separate Motions to Set being granted by this Court, the Court, sua sponte, found that the case should be set for trial in May 2020, and the parties should obtain a date from the Fourth Circuit staff immediately. The Court further found that it will not allow [Husband] to continue to bully [Wife].

The order set the case for trial, set a pre-trial settlement conference, and ordered Husband to be present for the settlement conference. After multiple continuances, the trial court entered an order setting a settlement conference for November 5, 2020, and the hearing thirteen days later.

The settlement conference failed. The next day, nearly two years after the petition was filed, Husband sent Wife a notice of nonsuit.

Before the order of nonsuit was entered, Wife filed a motion for damages or sanctions for an abusive lawsuit under Tennessee Code Annotated section 29-41-104, or in the alternative to alter or amend the order to award attorney fees. The motion asserted that Husband filed his petition "primarily to harass" Wife. Wife noted that Husband filed his notice of nonsuit two weeks before the scheduled hearing, after Wife had incurred "considerable attorney fees," including fees for both mediation and a judicial settlement conference. The motion asked the trial court for a hearing on her abusive lawsuit claim or, in the alternative, to alter or amend the "anticipated" order of nonsuit to include "the substantial attorney fees she incurred in being forced to defend this abusive, unfounded lawsuit for the past almost two years."

In response, Husband denied that his petition constituted an abusive civil action and noted that Wife's claim of an abusive lawsuit could not be considered because it was not filed prior to his notice of nonsuit. He claimed to be the "prevailing party" under his petition because he obtained some of the requested relief, namely termination of his obligations to pay transitional alimony and carry life insurance to ensure the alimony, within ninety days after he filed his petition.[7] He said he decided to nonsuit his petition

---

[7] As noted above, Wife conceded in her February 2019 answer to Husband's January 2019 petition that both obligations would terminate automatically when she married her fiancé the next month. The only dispute was Husband's obligation during the two-month interim between the filing of his petition and

- 7 -

because he stood "little or no chance" at the hearing after the trial court granted Wife's motion for a protective order relieving her of any further obligation to provide cell phone records.

In November 2020, the trial court entered an order of nonsuit, dismissing Husband's petition without prejudice. Then, in January 2021, the trial court entered an order denying Wife's pending abusive lawsuit claim, and also granting Wife's motion to alter or amend the order of dismissal to allow Wife to file a motion for attorney fees.

Wife followed up by filing a motion for attorney fees on two grounds. First, she sought fees under the MDA, which included a provision that the "prevailing party shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in connection" with defending a proceeding "related to the enforcement of any provision" of the MDA. Second, Wife sought fees under Tennessee Code Annotated section 36-5-103(c), which provides that trial courts may award attorney fees to a "prevailing party" in any proceeding "to enforce, alter, change, or modify any decree of alimony." In support, Wife again recited Husband's history of post-divorce litigation, including the earlier petition on child custody and child support that was nonsuited immediately before trial, after Wife had incurred substantial attorney fees.

Husband's response again claimed he was the prevailing party on the petition at issue. Husband also filed a cross-motion for attorney fees for prevailing on Wife's abusive lawsuit motion. *See* Tenn. Code Ann. § 29-41-106(d)(2).

As relevant to this appeal, the trial court granted Wife's motion for attorney fees. It awarded her $16,500 in "reasonable attorney fees and costs she incurred in being forced to defend this action for more than two years."[8] Husband appealed the award of attorney fees.

The Court of Appeals reversed the trial court's award of attorney fees to Wife. *Colley v. Colley*, No. M2021-00731-COA-R3-CV, 2022 WL 17009222, at *1 (Tenn. Ct.

---

Wife's scheduled remarriage. Thus, the "relief" Husband claimed, termination of the transitional alimony and life insurance obligation, occurred naturally upon Wife's remarriage under the terms of the original MDA.

[8] The trial court acknowledged "prevailing party" provisions in both the MDA and section 36-5-103(c) and commented that "a persuasive argument can be made supporting a finding that [Wife] is indeed the 'prevailing party' in this case." The trial court reasoned, however, that there was no need to determine whether Wife was a prevailing party because her answer included an affirmative prayer for relief in the form of attorney fees. It held that Husband's voluntary dismissal did not operate to dismiss Wife's prayer for attorney fees and that his voluntary nonsuit "was not a final order from which an appeal could be taken."

App. Nov. 17, 2022), *perm. app. granted*, (Tenn. Mar. 9, 2023).[9] In so doing, it considered whether Wife was a prevailing party under the MDA or section 36-5-103(c) as a single combined issue. *Id.* at *5–6. Applying *Himmelfarb v. Allain*, 380 S.W.3d 35 (Tenn. 2012), the intermediate appellate court held that neither party was a "prevailing party" for purposes of a right to recover attorney fees under either the MDA or Tennessee Code Annotated Section 36-5-103(c). *Colley*, 2022 WL 17009222, at *6. For that reason, it held that the trial court erred in awarding Wife her attorney fees. *Id.*

We granted Wife's request for permission to appeal on the issue of whether she is a "prevailing party" entitled to attorney fees under the parties' MDA and Tennessee Code Annotated section 36-5-103(c). Both of these are questions of law we review *de novo*. *See Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 59 (Tenn. 2023) (citation omitted); *Eberbach v. Eberbach*, 535 S.W.3d 467, 473 (Tenn. 2017) (citations omitted).

## ANALYSIS

On the question of attorney fees, Tennessee has historically followed the "American Rule." *Eberbach*, 535 S.W.3d at 474 (citation omitted). Under this rule, parties to civil cases must generally pay their own attorney fees. *Id.* (citing *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 309 (Tenn. 2009)). Otherwise, a party in a civil action may recover attorney fees "only if: (1) a contractual or statutory provision creates a right to recover attorney's fees; or (2) some other recognized exception to the American Rule applies, allowing for recovery of such fees in a particular case." *Id.* (quoting *Cracker Barrel*, 284 S.W.3d at 308). The party seeking payment of their attorney fees bears the burden of showing an exception to the American Rule. *Id.*

In this appeal, Wife contends that the Court of Appeals erred in reversing her award of attorney fees under both a contract, the parties' MDA, and a statute, Tennessee Code Annotated section 36-5-103(c).[10] Both are recognized exceptions to the American Rule.

---

[9] The Court of Appeals noted that Wife did not appeal the trial court's denial of her request for fees under the abusive lawsuit statute, Tennessee Code Annotated section 29-41-106. *Id.* at *5. Wife's entitlement to attorney fees under the abusive lawsuit statute is not at issue in this appeal.

[10] For the first time, at oral argument before this Court—without having raised the argument in the briefs or given notice to opposing counsel—Husband raised lack of subject matter jurisdiction. Because lack of subject matter jurisdiction can be raised at any time and in any court, *Johnson v. Hopkins*, 432 S.W.3d 840, 844 (Tenn. 2013) (citation omitted), we briefly consider Husband's argument. In general, Husband argues that Wife's motion for abusive lawsuit or to alter or amend the anticipated order of nonsuit to award attorney fees was filed prematurely, so it did not "carry over" past entry of the order of nonsuit,

In addition, both parties in this case seek an award of attorney fees on appeal.

In *Eberbach*, this Court observed that "[f]ee requests made pursuant to contractual and statutory authority must be analyzed separately, though they will often be requested together." 535 S.W.3d at 477. We advised courts to consider fee requests under MDAs first because an MDA with a mandatory fee provision would be binding, while attorney fee awards under section 36-5-103(c) are discretionary. *Id.* at 477–78. We consider the MDA first.[11]

### *Attorney Fees at Trial Level Under MDA*

In June 2012, the parties reached agreement on the terms of their MDA. *See* Tenn. Code Ann. § 36-4-103(b) ("The [marital dissolution] agreement shall be incorporated in the decree or incorporated by reference."). The attorney fee provision is contained in section XV of the agreement, entitled "Indemnification."[12] It states:

> In the event it becomes reasonably necessary for either party to institute or defend legal proceedings related to the enforcement of any provision of this Agreement, the prevailing party shall also be entitled to a judgment for

---

leaving the trial court without subject matter jurisdiction to award attorney fees. Husband is incorrect. As noted above, at the time the order of nonsuit was entered, Wife's motion for damages or sanctions for an abusive lawsuit under Tennessee Code Annotated section 29-41-104 remained pending. In the order dismissing the abusive lawsuit claim, the trial court invited Wife to re-file the motion to alter or amend the nonsuit order to award attorney fees, which Wife did. A final, appealable order "resolves the issues raised in the parties' motions, leaving nothing else for the trial court to do." *Garner v. Garner*, No. E2011-01012-COA-R3-CV, 2012 WL 1143781, at *3 (Tenn. Ct. App. Apr. 5, 2012) (citation omitted, cleaned up). It is well-settled that, until a final, appealable order is entered, the case remains "in the bosom of the trial court," and it may modify any rulings at any time before a final order is entered. *Stovall v. UHS Lakeside, LLC*, No. W2013-01504-COA-R9-CV, 2014 WL 2155345, at *3 n.5 (Tenn. Ct. App. Apr. 22, 2014) (citation omitted), *overruled on other grounds by Davis ex rel. Davis v. Ibach*, 465 S.W.3d 570 (Tenn. 2015). At the time Wife responded to the trial court's invitation and filed a request for attorney fees under Tennessee Code Annotated section 36-5-103(c), no final, appealable order had been entered in the case, the case was still within the bosom of the trial court, and the trial court was free to alter or amend the order of nonsuit. Husband's argument is without merit.

[11] As amicus curiae, the State of Tennessee takes no position on interpreting the parties' MDA.

[12] *Indemnify*, *Black's Law Dictionary* (11th ed. 2019) ("To reimburse (another) for a loss suffered because of a third party's or one's own act").

- 10 -

reasonable expenses, including attorney's fees, incurred in connection with such proceedings.

We must construe this provision to determine whether Wife is entitled to attorney fees even though Husband filed a notice to nonsuit his 2019 post-divorce petition before it was adjudicated on its merits.[13]

Because marital dissolution agreements are contracts, they are "subject to the rules governing construction of contracts." *Eberbach*, 535 S.W.3d at 478 (citing *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006)). Under Tennessee law on contract interpretation, the "central principle . . . [is] to interpret contracts so as to ascertain and give effect to the intent of the contracting parties." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019) (citations omitted). Under "the strong strain of textualism in Tennessee caselaw," we "keep the written words as the lodestar of contract interpretation." *Id*. (citations omitted). Tennessee courts consider evidence of context where appropriate, but we "give primacy to the contract terms, because the words are the most reliable indicator—and the best evidence—of the parties' agreement when relations were harmonious, and where the parties were not jockeying for advantage in a contract dispute." *Id*. (quoting Feldman, 21 Tenn. Practice § 8:14). We interpret MDAs as they are written, "giving the language used a natural meaning." *Eberbach*, 535 S.W.3d at 478 (citation omitted).

Here, Husband filed a petition to terminate the transitional alimony provided to Wife in the MDA. In connection with termination of the transitional alimony, his petition also sought to terminate the requirement that Husband have Wife as a beneficiary on his life insurance policy to secure the alimony. Once Husband filed his petition, "Wife was forced to defend" her award of transitional alimony under the MDA and the related life insurance obligation. *See id*. at 480.

Specifically, under the language in the attorney fee provision in the MDA, "it [became] reasonably necessary for [Wife] to . . . defend legal proceedings related to the enforcement of" the transitional alimony and life insurance obligations awarded to Wife in the MDA. Consequently, under this attorney fee provision, Wife is "entitled to a judgment for reasonable expenses, including attorney's fees, incurred in connection with such proceedings" if she is considered the "prevailing party," in light of Husband's nonsuit.

---

[13] A "nonsuit" voluntarily dismisses a case without prejudice; it is authorized under certain conditions by Rule 41.01 of the Tennessee Rules of Civil Procedure. Tenn. R. Civ. P. 41.01(1). To take effect, the notice of nonsuit must be followed by an order of voluntary dismissal signed by the court and entered by the clerk. *Id*. at (3).

Wife argues that, when litigation Husband initiated "ends with a judgment that dismisses a plaintiff's claims and affords him no relief, it makes little sense to conclude that the defendant did not 'prevail'" as the term is used in the MDA. Appellant's Brief at 25 (filed April 4, 2023), No. M2021-00731-SC-R11-CV. In response, Husband argues Wife cannot be considered the prevailing party in the context of his petition to end his alimony obligation because he nonsuited the petition, so the trial court never ruled on the merits.

We must agree with Wife. Husband's position finds no support in the text of the MDA. The filing of Husband's petition to reduce his alimony obligations under the MDA forced Wife to defend the MDA. In doing so, Wife's only goal was to preserve the status quo, through either a decision on the merits or dismissal of the petition. Husband's choice to nonsuit his petition meant that Wife, as the defending party, achieved that result.

As Husband acknowledged in oral argument, the result would be the same with any type of dismissal of Husband's petition; a voluntary dismissal without prejudice, a voluntary dismissal with prejudice, a dismissal by the trial judge on a procedural ground, or a dismissal by the trial judge on the merits. In any of these scenarios, Wife successfully achieved her objective of keeping her alimony award. *See*, *e.g.*, *Prevail*, 2 *Shorter Oxford English Dictionary* (6th ed. 2007) ("be effectual or efficacious; succeed"); *Prevail*, *Webster's Third New International Dictionary of the English Language Unabridged* (1993) ("to be successful"). Wife is the "prevailing party" in the trial court proceedings.

Accordingly, under the attorney fee provision in the parties' MDA, as the "prevailing party," Wife is "entitled to a judgment for reasonable expenses, including attorney's fees, incurred in connection with" her defense of Husband's petition at the trial court level.

In *Eberbach*, we advised: "Fee requests made pursuant to contractual and statutory authority must be analyzed separately, though they will often be requested together." 535 S.W.3d at 477. Here, however, the Court of Appeals conflated its analysis of whether Wife was the prevailing party, interpreting the MDA and the statute together, rather than separately. *Colley*, 2022 WL 17009222, at *5. Consequently, for clarity and to provide guidance in future cases, we exercise our discretion to consider separately whether Wife is a "prevailing party" under section 36-5-103(c), in light of Husband's decision to nonsuit his 2019 post-divorce petition before it was adjudicated on the merits.

### *Attorney Fees at Trial Level Under Statute*

The statute at issue in this appeal expressly creates a right to seek attorney fees in certain family law proceedings. Tenn. Code Ann. § 36-5-103(c) (2021). Section 36-5-103(c) in its current configuration provides for awards of attorney fees to a "prevailing party" in certain original and post-award family law proceedings involving alimony, child support, child custody, or a parenting plan. *Id*. As noted above, the Court of Appeals reversed the trial court's attorney fee award on the basis that Wife was not a "prevailing party" under this statute because Husband filed a notice to nonsuit his 2019 post-divorce petition before it was adjudicated on its merits. *Colley*, 2022 WL 17009222, at *5–6.

On appeal, Wife offers a belt-and-suspenders argument. She contends that she became a "prevailing party" in the underlying divorce by virtue of the award of alimony to her in the parties' MDA; Husband did not appeal the final divorce decree, which incorporated the MDA. She maintained her status of "prevailing party," she contends, by successfully fending off Husband's 2019 petition, which sought to challenge her right to the alimony provided in the MDA. Thus, in both the original divorce and in the post-divorce litigation, Wife asserts that she remained the prevailing party regardless of whether Husband's petition was dismissed on its merits or by nonsuit.

In support, Wife relies on intermediate appellate court cases interpreting section 36-5-103(c) and awarding attorney fees pursuant to the statute to the respondent party upon the petitioner's voluntarily nonsuit. *See*, *e.g.*, *Hayes v. Scoggin*, No. W2019-00057-COA-R3-CV, 2019 WL 3337219 (Tenn. Ct. App. July 25, 2019); *Pounders v. Pounders*, No. W2010-01510-COA-R3-CV, 2011 WL 3849493 (Tenn. Ct. App. Aug. 31, 2011); *Hansen v. Hansen*, No. M2008-02378-COA-R3-CV, 2009 WL 3230984 (Tenn. Ct. App. Oct. 7, 2009). Wife acknowledges that section 36-5-103(c) was amended in 2018 to say that attorney fees may be awarded to a "prevailing party" instead of a "plaintiff spouse." Tenn. Code Ann. § 36-5-103(c) (2017); *see* Act of July 1, 2018, ch. 905, 2018 Tenn. Pub. Acts. 1186. She argues that the 2018 amendment was intended to codify intermediate appellate decisions allowing an award of attorney fees to respondent spouses defending an award of child support or alimony.

In response, Husband argues that, to be considered a "prevailing party" under section 36-5-103(c), the case must be heard and decided on the merits, and the outcome must materially alter the parties' legal relationship in favor of the party seeking the fee award. He relies primarily on the analysis of the Court of Appeals in this case. The intermediate appellate court tethered its reversal of the trial court's attorney fee award to

this Court's decision in *Himmelfarb*, 380 S.W.3d at 40, which held that a voluntary nonsuit is not a "favorable termination" in a malicious prosecution action because it is not a dismissal on the merits. *See Colley*, 2022 WL 17009222, at *5–6.

In this case, the Court of Appeals cited prior intermediate appellate cases that applied *Himmelfarb* outside the context of malicious prosecution and concluded that because voluntary dismissal is not dismissal on the merits, neither party ends up as the "prevailing party." *Id*. at *6 (first citing *Jasinskis v. Cameron*, No. M2019-01417-COA-R3-CV, 2020 WL 2765845, at *5 (Tenn. Ct. App. May 27, 2020); then citing *Justice v. Craftique Constr., Inc.*, No. E2019-00884-COA-R3-CV, 2021 WL 142146, at *3 (Tenn. Ct. App. Jan. 15, 2021)). Based on the reasoning in those cases, the Court of Appeals held that Husband's nonsuit left the parties "as if no action had been brought at all," so neither Husband nor Wife was a "prevailing party" under Tennessee Code Annotated section 36-5-103(c). *Id.* (quoting *Justice*, 2021 WL 142146, at *3).

Resolving the issue presented in this appeal requires us to construe section 36-5-103(c). To interpret the statute, we focus on its text. "The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)). "We presume that every word in a statute has meaning and purpose and that each word's meaning should be given full effect . . . ." *Beard v. Branson*, 528 S.W.3d 487, 496 (Tenn. 2017) (quoting *Harris v. Haynes*, 445 S.W.3d 143, 146 (Tenn. 2014)). We examine "the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *Coffee Cnty.*, 574 S.W.3d at 839 (quoting *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005)). A "cardinal rule of statutory construction is to effectuate legislative intent," and the rules of construction are aids to that end. *Spires v. Simpson*, 539 S.W.3d 134, 143 (Tenn. 2017) (quoting *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998)). "Our construction must be reasonable in light of the statute's purposes and objectives." *In re Markus E.*, 671 S.W.3d 437, 460 (Tenn. 2023) (citing *Beard*, 528 S.W.3d at 496).

As this Court has observed, while there is "no absolute right to" attorney fees under section 36-5-103(c), "their award in custody and support proceedings is familiar and almost commonplace." *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989). The statute has long been applied to award attorney fees to divorced spouses forced to defend awards of alimony, child support, and child custody. *See, e.g.*, *St. John-Parker v. Parker*, 638 S.W.3d 624, 643 (Tenn. Ct. App. 2020) (affirming trial court's award of attorney fees to ex-wife "incurred to enforce and defend an alimony award in [the ex-husband's] bankruptcy

- 14 -

proceeding."); *Barnes v. Barnes*, 614 S.W.3d 90, 104 (Tenn. Ct. App. 2019) (citing multiple cases awarding attorney fees to alimony recipients forced to defend an action to reduce or terminate alimony); *Jarman v. Jarman*, No. M2017-01730-COA-R3-CV, 2018 WL 5778811, at *6 (Tenn. Ct. App. Oct. 31, 2018) ("When Husband filed his counter-petition to terminate his alimony obligation, Wife defended the existing alimony decree, and by doing so Wife was seeking 'to enforce' the existing award of alimony then in effect."); *Malkin v. Malkin*, 475 S.W.3d 252, 263 (Tenn. Ct. App. 2015) ("Pursuant to [section 36-5-103(c)], a court may award attorney's fees to an alimony recipient who is forced to defend an action to reduce or terminate that alimony."); *Duke v. Duke*, No. M2001-00080-COA-R3-CV, 2003 WL 113401, at *5 (Tenn. Ct. App. Jan. 14, 2003) ("A spouse who defends a petition to change an alimony or child support order is acting to enforce it."). The statute can also apply to child support cases where the parties were never married to one another. *See*, *e.g.*, *State ex rel. Groesse v. Sumner*, 582 S.W.3d 241, 269 (Tenn. Ct. App. 2019); *Miller v. Welch*, 340 S.W.3d 708, 714 (Tenn. Ct. App. 2010); *Massey v. Casals*, 315 S.W.3d 788, 799 (Tenn. Ct. App. 2009); *Richardson v. Spanos*, 189 S.W.3d 720, 729 (Tenn. Ct. App. 2005).

In the context of alimony, our Court of Appeals has explained the purpose of section 36-5-103(c):

> Alimony is only awarded in the first instance to an economically disadvantaged spouse who has a demonstrated need for the support. Absent a showing in a modification proceeding that the need no longer exists, requiring the recipient to expend that support for legal fees incurred in defending it would defeat the purpose and public policy underlying the statute on spousal support. Additionally, the possibility of being burdened with a former spouse's attorney's fees helps deter unwarranted or unjustified attempts by an obligor to evade or reduce an existing support obligation.

*Stratienko v. Stratienko*, No. E2022-01802-COA-R3-CV, 2023 WL 7326321, at *12 (Tenn. Ct. App. Nov. 7, 2023) (citations omitted). The prospect of an attorney fee award under section 36-5-103(c) "discourages vexatious petitions" by the obligor ex-spouse. *Pounders*, 2011 WL 3849493, at *5 (quoting Janet Leach Richards, *Richards on Tennessee Family Law,* § 14–3(a)(3) (2d ed. 2004)). In the same way, an attorney fee award after dismissal of one vexatious petition has the salutary value of discouraging repetitive vexatious petitions.

As noted by Wife, our intermediate appellate court has affirmed awards of attorney fees pursuant to section 36-5-103(c) where a petition for modification of child custody or child support was nonsuited prior to adjudication on the merits. In *Hansen v. Hansen*, the

obligor father "waited until the hearing to voluntarily dismiss his petition to modify his child support obligation." 2009 WL 3230984, at *3. The appellate court affirmed the trial court's award of attorney fees "[i]n light of the fact that Mother's counsel had to prepare for the hearing as if the issue of support would be litigated." *Id.* In *Pounders v. Pounders*, the father filed a petition to modify the permanent parenting plan, seeking a decrease in child support and an increase in his parenting time. 2011 WL 3849493, at *1. After the mother hired an attorney, conducted discovery, took the father's deposition, and hired a private investigator to ascertain whether the father was clean and sober as he claimed, the father nonsuited his petition. *Id.* at *1–2. The trial court awarded attorney fees under section 36-5-103(c), and the appellate court affirmed. *Id.* at *5. The Court of Appeals reasoned that the mother had to prepare to litigate the issues in the father's petition, and the purpose behind section 36-5-103(c) "would not be served if the other spouse could simply dismiss his or her petition prior to the hearing in order to avoid payment of the custodial spouse's attorney's fees." *Id. See also Hayes*, 2019 WL 3337219, at *5 (after the mother voluntarily dismissed her petition without prejudice, the father was awarded attorney fees he incurred in defending against it); *Sparkman v. Sparkman*, No. W2012-00405-COA-R3-CV, 2013 WL 3325207, at *5 (Tenn. Ct. App. June 27, 2013) (finding valid ground for attorney fee award where the mother had to prepare a defense against the father's petition to modify the parenting plan, "which he later withdrew").

Nevertheless, as Husband points out and as Wife concedes, these cases were decided prior to the 2018 amendment of section 36-5-103(c). Accordingly, we look at how the statute was amended in 2018.

Prior to the 2018 amendment, section 36-5-103(c) provided that a "plaintiff spouse" could recover attorney fees:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (2017). *See* Act of July 1, 2018, ch. 905, 2018 Tenn. Pub. Acts. 1186. Among other things, the 2018 amendment revised the statutory language to

provide for an award of attorney fees to a "prevailing party" instead of a "plaintiff spouse" in specified family law proceedings:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103(c). This version of the statute was in effect when Husband filed his petition in January 2019. As can be seen, in addition to actions "enforcing" a decree of alimony, the amended statute also expressly includes actions to "alter, change, or modify" a decree of alimony or child support. It also includes such actions with respect to parenting plans as well as custody actions.

All told, these revisions bespeak an intent to broaden section 36-5-103(c), not narrow it. In particular, the term "prevailing party" is overall more inclusive than "plaintiff spouse." The term "prevailing party" would allow the statute to reach actions in which an ex-spouse is placed in the position of having to litigate to protect or defend an award of alimony or child support but is not necessarily a "plaintiff" in the litigation.

Against that backdrop, we examine the version of section 36-5-103(c) applicable to this case. The statute gives trial courts discretion to award attorney fees in specific family law situations: certain original and post-award proceedings on alimony, child support, child custody, and parenting plans. *Id.*

In Husband's brief, he takes the position that, in order to qualify for an award of attorney fees, "the case must have been heard and decided on the merits and facts of the case and the outcome must have materially altered the legal relationship of the parties." Respectfully, this position is inconsistent with the text of the statute. It explicitly applies in

> any criminal or civil contempt action or other proceeding to *enforce, alter, change, or modify* any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

*Id.* (emphasis added). These are all proceedings in which material alteration in the parties' legal relationship could occur, as where an obligor spouse gets a reduction in alimony or child support. But they are also proceedings in which an obligee spouse must incur attorney fees to defend an existing award of alimony or child support granted in the original divorce. In such a proceeding, the objective of the obligee spouse may be no change whatsoever, that is, to *prevent* an outcome that "materially alter[s] the legal relationship of the parties."

Cases applying the prior version of the statute show the need for such a provision. It is not unusual in family law cases to see an obligor former spouse with significant monetary resources force a financially disadvantaged ex-spouse to incur attorney fees post-divorce to enforce or defend alimony, child support, or a parenting plan originally ordered by the trial court. *See, e.g.*, *Stratienko*, 2023 WL 7326321, at *4 (describing efforts of ex-husband with "vastly" greater earning capacity to avoid paying spousal support to ex-wife); *St. John-Parker*, 638 S.W.3d at 631 (reciting testimony that attorney ex-husband said he was "going to litigate this until every last dime was gone, he wasn't going to pay [his ex-wife] a dime"); *Barnes*, 614 S.W.3d at 95–97 (detailing very substantial assets of husband who claimed he could no longer afford alimony to wife, a registered nurse). This fact pattern can also arise with parents who were never married to one another. *See, e.g.*, *In re E.J.M.*, 259 S.W.3d 124, 134 (Tenn. Ct. App. 2007) (recounting father's successive petitions and appeals to modify custody described as his "relentless approach to resolving this matter through litigation" bordering on "an abuse of the judicial process").

The trial judge in this case apparently viewed Husband as having taken such a path. Here, the parties' agreed MDA and parenting plan marked the beginning of years of post-divorce litigation in which Husband unsuccessfully litigated numerous issues, including a petition to modify the parties' agreed arrangement that was nonsuited a year and a half after it was filed and after Wife had incurred significant attorney fees to defend the original arrangement. Husband then pursued an appeal to the Court of Appeals in which he represented himself and lost on appeal. Failing in those efforts, Husband then embarked on another series of post-divorce proceedings, culminating in the instant second appeal.

The petition that is the subject of this appeal was filed roughly two months before Wife's scheduled remarriage, when Husband's transitional alimony obligation would naturally end if he did nothing at all. *See* Tenn. Code Ann. § 36-5-121(g)(4). The petition was Husband's effort to keep from paying only *two months* of transitional alimony and the associated life insurance premiums. His fulsome discovery requests over this minimal dispute included a demand that Wife hand over to Husband *her actual cell phone*, purportedly to allow him to conduct a forensic examination without limit. His aggressive post-divorce litigation prompted the trial judge to comment that Husband "has been a bully and he has bullied [Wife] for years."

The statute is clearly applicable here. We must reject Husband's contention that, in order to qualify for an award of attorney fees, the case must have been decided in a manner that "materially altered the legal relationship of the parties." The text of the statute expressly provides for an award of attorney fees for a party defending against a petition to "alter, change, or modify" an award, where the defending party seeks *no* alteration in the legal relationship of the parties.

This tees up the question of whether Wife can be considered a "prevailing party" under section 36-5-103(c). Under the statute, trial courts may award attorney fees "from the non-prevailing party" to the "prevailing party." Tenn. Code Ann. § 36-5-103(c). Wife maintains that she was the prevailing party in both the post-divorce modification proceeding and also in the original divorce, because the final decree incorporated the parties' MDA, including its award of alimony to Wife.

We need not and do not determine who was the "prevailing party" in the original divorce. The text of the statute provides: "A prevailing party may recover reasonable attorney's fees. . . from the nonprevailing party in any . . . proceeding to enforce, alter, change, or modify any decree of alimony. . . ." Tenn. Code Ann. §36-5-103(c). This appeal arises from the attorney fee award to Wife in the proceedings on Husband's post-divorce petition to alter his alimony obligation. The statute requires us to determine who the prevailing party is in *this specific* proceeding, not some past proceeding.

As we have observed, in the proceedings on Husband's petition to curtail the alimony, Wife sought no affirmative relief other than attorney fees and costs. She sought only to fend off Husband's attempt to end the alimony sooner than provided in the MDA. Husband argues Wife cannot be considered the "prevailing party" in the context of his petition to end his alimony obligation because the trial court never ruled on the merits of his petition.

Respectfully, Husband's position finds no support in the text of the statute. The text in section 36-5-103(c) contains no indication that a court decision on the merits is required. The nonsuit of Husband's petition meant that Wife succeeded in fending off his attempt to reduce the alimony he had to pay her. As noted in our discussion of the parties' MDA, Husband acknowledged that this result would be the same with any type of dismissal of Husband's petition, voluntary or otherwise, with or without prejudice. Regardless of the type of dismissal, Wife successfully achieved her objective of retaining her alimony award. She "prevailed" over Husband in his post-divorce effort to end the alimony.

The State of Tennessee submitted a brief as amicus curiae, asking the Court to issue a broad ruling on interpretation of the phrase "prevailing party" in *all* Tennessee statutes.[14] It argues that the term "prevailing party" is a "legal term of art" as used in all statutes, both federal and state. Based on federal precedent, it asks us to hold that no party in any type of litigation can qualify as a "prevailing party" for an attorney fee award unless that party obtains a favorable judicial decision.[15]

As observed by Wife in response to the State's amicus brief, the State "has briefed a materially different question than the one presented here." First, it is unclear why the State reaches for federal decisions applying federal civil rights statutes, such as *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 603 (2001).[16] It's hard to imagine a setting further removed from ours here: a *family law* statute—a bread-and-butter area of the law that is the exclusive province of the states. *See Sosna v. Iowa*, 419 U.S. 393, 404 (1975) (describing "domestic relations" as "a virtually exclusive province of the States").[17]

---

[14] The State carves out statutes that define the term "prevailing party."

[15] The separate opinion offers a similar argument and preferred conclusion. We respectfully disagree.

[16] *Buckhannon* also involved numerous attendant circumstances not presented in our family law statutes. For example, the dispute in *Buckhannon* was whether federal courts should adopt the "catalyst theory," under which a plaintiff is deemed "prevailing" when the lawsuit was a catalyst to voluntary changes by the defendant (often a governmental entity) that moot the case. 532 U.S. at 601–02. Lower federal courts had adopted the catalyst theory after the Supreme Court effectively removed most of the discretion on attorney fees explicitly given to trial courts under the civil rights statutes. *See Stanton v. S. Berkshire Reg'l Sch. Dist*., 197 F.3d 574, 576 (1st Cir. 1999) (commenting on removal of discretion), *abrogated by Buckhannon,* 532 U.S. 598 (2001). Under the "catalyst theory," the Court commented in *Buckhannon*, attorney fee hearings became a "second litigation of significant dimension" to discern the subjective motivations of defendant governmental bodies in changing conduct. 532 U.S at 609–10 (citation omitted). In contrast, in family law litigation, trial courts are afforded full discretion, the dispute is between two private parties, and the trial judge exercises his or her discretion after having personally observed the parties' conduct throughout the proceedings.

[17] The State also appears to imply that this Court in *Fannon v. City of LaFollette* opined on the interpretation of "prevailing party" for purposes of attorney fee awards. 329 S.W.3d 418 (Tenn. 2010). It did not. *Fannon* discussed costs but found no statutory basis for an award of attorney fees, irrespective of who was the prevailing party. *Id*. at 432–33.

Second, the great bulk of the federal authorities cited by the State involve attorney fee awards to *plaintiffs*.[18]  *See, e.g., Buckhannon*, 532 U.S. at 601.  This case involves an attorney fee request by a *defendant*. The federal authorities cited by the State take pains to point out that the considerations for plaintiffs and defendants seeking attorney fees are different:

> Plaintiffs and defendants come to court with different objectives. A plaintiff seeks a material alteration in the legal relationship between the parties. A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor. The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision . . . .

*CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 431 (2016)).

Third, the State's brief asserts that the U.S. Supreme Court in *CRST* held that, for defendants seeking attorney fees, the trial court must "'reject the plaintiff's attempt to alter the parties legal relationship' in a decision 'marked by 'judicial *imprimatur*,'" that is, defendants must "secure[] a judicial decision that rejects the plaintiff's claims and provides enduring relief." Respectfully, *CRST* held no such thing. After giving context by describing prior federal caselaw on plaintiffs, including the "judicial imprimatur" language, the Court in *CSRT* pointed out that it had not yet said "how courts should determine whether a defendant has prevailed." *CRST*, 578 U.S. at 422.  At the end of the day, *CRST* held only that any dismissal need not be on the merits; defendants are prevailing parties if "the litigation was resolved in their favor," regardless of the reason. *Id*. at 434.  It left open the question of whether a defendant can be the prevailing party if the dismissal is without prejudice. *Id*.[19]

In a recent decision involving attorney fee awards to plaintiffs, the U.S. Supreme Court re-emphasized that plaintiffs and defendants are considered under different standards, and it summed up its limited holding in *CRST*:

---

[18] We need not and do not comment on the standard for an attorney fee award to a petitioner/plaintiff under section section 36-5-103(c) as amended.

[19] On remand, the district court held that it was not necessary for the defendant to obtain a preclusive judgment in order to be deemed the prevailing party. *Equal Emp. Opportunity Comm'n v. CRST Van Expedited, Inc*., 277 F. Supp. 3d 1000, 1015 (N.D. Iowa 2017), *aff'd*, 944 F.3d 750 (8th Cir. 2019).

A different body of caselaw addresses when a *defendant* is a "prevailing party" for the purposes of other fee-shifting statutes. Our decision today should not be read to affect our previous holding that a defendant need not obtain a favorable judgment on the merits to prevail, nor to address the question we left open of whether a defendant must obtain a preclusive judgment in order to prevail. *See CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 431–434, 136 S.Ct. 1642, 194 L.Ed.2d 707 (2016). As we have explained, "[p]laintiffs and defendants come to court with different objectives." *Id*. at 431, 136 S.Ct. 1642.

*Lackey v. Stinnie*, 145 S. Ct. 659, 669 (2025) (footnote not numbered).

But even if the U.S. Supreme Court *were* to interpret federal civil rights statutes for defendants in the fashion the State claims, it would not be persuasive here. Whatever "legal terms of art" may exist in federal civil rights jurisprudence, we interpret state family law statutes in the context of state family law jurisprudence. Under that jurisprudence, our intermediate appellate court has historically applied section 36-5-103(c) to affirm awards of attorney fees to defendants upon the plaintiff's voluntarily nonsuit, to discourage ex-spouses from using litigation as a cudgel.[20] Interpreting the term "prevailing party" in section 36-5-103(c), as amended, in line with our state's prior jurisprudence gives the term its "natural and ordinary meaning." *Lawson*, 661 S.W.3d at 59. This is explained in a plain-spoken way by former Texas Chief Justice Nathan Hecht in dissent, after his colleagues had held that, when the plaintiff nonsuits a case without prejudice, a defendant can be considered a prevailing party entitled to attorney fees only if "the plaintiff took the nonsuit in order to avoid an unfavorable judgment." *Epps v. Fowler*, 351 S.W.3d 862, 864 (Tex. 2011). Then-Chief Justice Hecht disagreed by offering a colorful imagined colloquy:

Now surely it is beyond argument that, policy considerations aside, when a plaintiff decides to abandon his lawsuit, the defendant, thereby relieved of the further worry and expense of defending himself, thinks he won. Common experience teaches that the challenger who forfeits, loses, and his opponent wins. Imagine the conversation between the Eppses and their lawyer: "Good news! The Fowlers dropped their suit." "Wow! So we won!" "No, you didn't win. The Fowlers just gave up." "But we said all along the case had no merit, and now they've effectively conceded it. We didn't win?" "Well, you have to understand that a federal case construing the Civil Rights Act has held that. . . ."

---

[20] *See*, *e.g.*, *Hayes*, 2019 WL 3337219; *Pounders*, 2011 WL 3849493; *Hansen*, 2009 WL 3230984.

*Id.* at 873 (Hecht, J. dissenting). We agree. Under section 36-5-103(c) as amended, "the challenger who forfeits, loses, and his opponent wins." *Id.* Here, Wife sought to preserve the status quo, and whether she wins on the merits or by voluntary dismissal, both are wins for the status quo. We reject the federal precedent cited by the State as amicus.

We next consider Husband's contention that this case is controlled by *Himmelfarb v. Allain*. 380 S.W.3d 35 (Tenn. 2012). It is not.

*Himmelfarb* involved the common law tort of malicious prosecution. *See id.* at 36. To prove malicious prosecution, a claimant must show, among other things, that the prior suit or proceeding against the plaintiff was terminated in the plaintiff's favor. *Id.* at 38. This element of the tort requires termination on the merits, and because a voluntary nonsuit is not on the merits, *Himmelfarb* held that a nonsuit is not a "favorable termination" in a malicious prosecution action. *Id.* at 40–41.

In contrast, this appeal requires us to construe "prevailing party" language in a statute, section 36-5-103(c). *Himmelfarb* did not interpret a statutory "prevailing party" provision *at all*. It addressed the requirements for a common law tort claim. *Himmelfarb* is limited to the context of the tort of malicious prosecution and has no application to any case involving interpretation of a statutory "prevailing party" provision.

Husband argues that if we hold that a respondent may be a "prevailing party" under section 36-5-103(c) when the petitioner nonsuits his petition to alter or modify an award of alimony, an award of child support, or a parenting plan, this would chill the right of plaintiffs to take a voluntary nonsuit. [Husband's Br. at 19] *See Ingram v. Gallagher*, 671 S.W.3d 428, 435 (Tenn. 2023) ("Tennessee Rule of Civil Procedure 41.01(1) provides that a plaintiff has the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal."). Even when taking a nonsuit is the most responsible decision, Husband warns, "no party would ever dismiss a case voluntarily . . . for fear of the risk of having to pay attorney fees."

Not so. Awards of attorney fees under section 36-5-103(c) are permissive, not mandatory. The statute says they are "fixed and allowed in the court's discretion." Tenn. Code Ann. § 36-5-103(c). Trial courts have full discretion under section 36-5-103(c) to consider the equities between the parties in deciding whether to award reasonable attorney fees after a nonsuit.

As noted above, under the previous iteration of section 36-5-103(c), our Court of Appeals held repeatedly that attorney fees could be awarded pursuant to the statute after a petitioner in post-divorce proceedings took a nonsuit. *See, e.g., Hansen*, 2009 WL

3230984, at *3; *Pounders*, 2011 WL 3849493, at *5; *Hayes*, 2019 WL 3337219, at *5; *Sparkman*, 2013 WL 3325207, at *5. Despite this consistent line of cases, Husband—a practicing attorney—nonsuited post-divorce petitions for modification after Wife had incurred substantial attorney fees not once, but *twice*. Thus, Husband's own conduct belies his assertion that the prospect of an attorney fee award under section 36-5-103(c) to "discourage[] vexatious petitions" by an obligor ex-spouse, *Pounders*, 2011 WL 3849493, at *5, will chill the right to nonsuit.

We hold that Wife may be considered a "prevailing party" under section 36-5-103(c) where Husband nonsuited his post-divorce petition to end his alimony obligation and the attendant obligation to have Wife as a beneficiary on his life insurance policy, prior to a determination on the merits of the petition. Under section 36-5-103(c), there need not be a decision on the merits or a material alteration in the legal relationship between the parties for the trial court to award attorney fees to a defending party who seeks to maintain the status quo. This holding is consistent with decisions by our Court of Appeals under the prior version of section 36-5-103(c) in *Hansen*, 2009 WL 3230984, at *3; *Pounders*, 2011 WL 3849493, at *5; *Hayes*, 2019 WL 3337219, at *5; and *Sparkman*, 2013 WL 3325207, at *5.

Accordingly, under both the MDA and section 36-5-103(c), we reverse the holding of the Court of Appeals that the trial court erred in awarding Wife her attorney fees at the trial court level, and we affirm the trial court's attorney fee award.[21] *Colley*, 2022 WL 17009222, at *6.

### Attorney Fees on Appeal

Parties to post-divorce proceedings may seek to recover appellate attorney fees under the attorney fee provision in their MDA, or on statutory grounds such as section 36-5-103(c). *Eberbach*, 535 S.W.3d at 475. Here, both parties seek an award of attorney fees for fees incurred in the appeal to the Court of Appeals and to this Court, pursuant to the parties' MDA and section 36-5-103(c).

We discussed appellate attorney fees in *Eberbach*:

---

[21] Wife filed a motion with this Court pursuant to Tenn. R. App. P. 14(b) and Tenn. R. App. P. 22(a) asking the Court to take judicial notice of a post-judgment fact, that Husband did not timely recommence his nonsuited claims. Our holding makes it unnecessary for us to rule on this motion.

In cases in which parties seek an award of attorney's fees under statutory authority alone, the statute governs the award of fees. In such cases, the statute is . . . the basis for the court's authority to grant fees on appeal. Thus, when appellate attorney's fees are requested pursuant to statutes like . . . section 36–5–103(c), which expressly permit the court to exercise its discretion, the [appellate court] should analyze any such request by exercising its discretion to determine whether an award to the prevailing party is appropriate.

The same is not true when the parties to post-divorce litigation have a marital dissolution agreement that contains a mandatory fee award provision. Our courts long have observed at the trial court level that parties are contractually *entitled* to recover their reasonable attorney's fees when they have an agreement that provides the prevailing party in a litigation is entitled to such fees.

535 S.W.3d at 477–78. Appellate courts have "no discretion whether to award attorney's fees when the parties have a valid and enforceable marital dissolution agreement which requires an award of reasonable attorney's fees to a prevailing or successful party." *Id*. at 478. For that reason, as noted above, "when confronted with a request for fees under both contractual and statutory authority, our courts should look to the parties' contract first before moving on to any discretionary analysis under statutes such as section 36–5–103(c)." *Id*.

Consequently, we consider both parties' requests under the MDA first. As noted above, the MDA provides that, if it "becomes reasonably necessary" for either party to "defend legal proceedings related to the enforcement of any provision" in the MDA, "the prevailing party shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in connection with such proceedings." Here, it was "reasonably necessary" for Wife to defend against Husband's appeal to the Court of Appeals, and "reasonably necessary" for Wife to appeal the Court of Appeals' ruling against her to this Court. Inclusion of the phrase "shall . . . be entitled" in the parties' MDA indicates that an award of reasonable attorney fees for the prevailing party is mandatory, so we are obliged to award appellate attorney fees to the prevailing party in this appeal. *Id*. at 478–80 (reversing the Court of Appeals for failing to award attorney fees and costs to the party that prevailed on appeal, pursuant to the marital dissolution agreement). In this appeal, we reversed the ruling of the Court of Appeals in Husband's favor and affirmed the ruling of the trial court in Wife's favor. On appeal, Wife is clearly the prevailing party under the MDA, and Husband is not.

- 25 -

As we did above in discussing attorney fees at the trial court level, for clarity and to provide guidance in future cases, we exercise our discretion to consider separately whether Wife is entitled to attorney fees on appeal under section 36-5-103(c). The statute provides that a "prevailing party" may recover attorney fees in any "proceeding to enforce, alter, change, or modify" a decree of alimony "both upon the original divorce hearing and at any subsequent hearing." Tenn. Code Ann. §36-5-103(c). Here, Husband's appeal of the trial court's order awarding attorney fees to the Court of Appeals is a continuation of the proceedings on Husband's petition to alter the alimony award. It also constitutes a "subsequent hearing" under section 36-5-103(c), as does Wife's appeal to this Court. *See Eberbach*, 535 S.W.3d at 477 (applying prior version of the statute). Wife was forced to defend the spousal support award in both the Court of Appeals and in this Court. Because we affirmed the ruling of the trial court in Wife's favor, she is also the prevailing party on appeal under section 36-5-103(c).

As noted in *Eberbach*, while fees under the MDA are mandatory, fees under section 36-5-103(c) are discretionary. 535 S.W.3d at 477–78. Consequently, we consider whether to award Wife fees for the appeal to the Court of Appeals and to this Court.

As our Court of Appeals has observed, requiring the recipient of alimony to expend the monies received for legal fees incurred in order to defend the original award "would defeat the purpose and public policy underlying the statute on spousal support." *Stratienko*, 2023 WL 7326321, at *12 (citation omitted). Moreover, the possibility of being required to pay a former spouse's attorney fees "helps deter unwarranted or unjustified attempts by an obligor to evade or reduce an existing support obligation." *Id*.

We reiterate that Husband's petition was an effort to keep from paying only two months of transitional alimony and the associated life insurance premiums, and his relentless post-divorce litigation caused the trial judge to remark that Husband "has been a bully and he has bullied [Wife] for years." Considering the purpose of the statute, the circumstances of Husband's appeal to the Court of Appeals, and the circumstances of Wife's appeal to this Court, we exercise our discretion to award Wife her attorney fees as the prevailing party on appeal, pursuant to section 36-5-103(c).

Accordingly, pursuant to the parties' MDA and section 36-5-103(c), we deny Husband's request for attorney fees on appeal, and we grant Wife's request for attorney fees incurred both in the appeal to the Court of Appeals and also in the appeal to this Court.

We remand the case to the trial court for a determination of the amount of Wife's reasonable attorney fees for the appeal to the Court of Appeals and to this Court.

## CONCLUSION

For the reasons stated herein, the judgment of the Court of Appeals is reversed, and the judgment of the Circuit Court is reinstated. The case is remanded to the Circuit Court to determine the amount of reasonable attorney fees Wife incurred on appeal to the Court of Appeals and to this Court. Costs on appeal are taxed to the appellee, John S. Colley, III, for which execution may issue if necessary.

                                         s/Holly Kirby, Chief Justice
                                         HOLLY KIRBY, CHIEF JUSTICE